**Staunton.**

DORR'S ADM'R v. ROHR AND ALS.

SEPTEMBER 16th, 1886.

1. JUDGMENTS—*Jurisdiction—Notice—Proceedings in rem.*—Notice and opportunity to be heard are essential to the jurisdiction of all courts, even in proceedings *in rem,* and judgment without jurisdiction is a nullity.

2. ORDER OF PUBLICATION—*Notice— War.*—During the war between the Confederate States and the United States, an order of publication, executed in Virginia, was without legal effect, and no notice, actual or constructive, upon a resident of New York.

3. FOREIGN ATTACHMENTS—*Notice to garnishee.*—Nor could jurisdiction be acquired of the fund attached by service of process on the garnishee, at such period, no legal service of notice being had on the non-resident defendant. Code 1873, ch. 148, sec. 20.

4. IDEM—*Garnishee—Non-resident.*—A garnishee in a foreign attachment is not the agent and representative of his creditor, the principal defendant; hence a seizure of the *res,* or attached fund, is not notice to the non-resident defendant, and cannot give jurisdiction.

5. IDEM—*Statute of limitations—Case at bar.*—In such case of attachment in equity instituted in July, 1861, upon service of process on resident garnishee and execution of order of publication against non-resident debtor in New York, the proceedings subsequent to the attachment having been set aside and an amended bill filed, and the non-resident debtor brought for the first time before the court the running of the statute of limitations was not suspended by those proceedings, and the plaintiff's claim being an account for work and labor done, was barred before the filing of said amended bill.

6. IDEM—*Saving clause—Appellate court.*—Nor is plaintiff's claim saved by Code 1873, ch. 146, sec. 20, which applies to a debtor " who had before resided in this State," and not to one who, like the

debtor in this case, had never resided here. Moreover, such defense, not having been raised by replication in court below, cannot, for the first time, be made in this court.

7. IDEM—*Sequestration—Federal decree—Injunction—Case at bar.*— Preston, in 1859, owed Dorr a debt, and secured it by trust deed to Gibboney. This debt Rohr attempted to attach in this suit in July, 1861. In 1862 the C. S. court sequestrated this debt as the property of an alien enemy. On suggestion that this debt was attached, the C. S. court directed Gibboney to pay it to the receiver, to be loaned out. It was so paid, and was loaned to Rohr. Later, in this suit, the court below adjudged Rohr to be entitled to the money as a credit on Dorr's alleged indebtedness to him. In 1878 Dorr got a decree in the U. S. circuit court against Gibboney's estate for his Preston debt. His executrix in this suit filed her cross-bill, alleging that her testator had in effect paid this Preston debt into the State court, though, in fact, he had paid it to the receiver of the C. S. court, and prayed that said decree of the U. S. circuit court in favor of Dorr against Gibboney's estate be perpetually enjoined. The injunction was awarded. On appeal by Dorr's administrator here—

HELD :

1. The court below had acquired no jurisdiction of Dorr's person or property, and its proceedings on the supposed garnishment were null.

2. The order of the C. S. court afforded no protection to the trustee, Gibboney.

3. Moreover, a State court cannot enjoin a decree of a federal court.

4. The injunction should be dissolved.

Argued at Wytheville.   Decided at Staunton.

Appeal from decree of circuit court of Washington county, rendered at its May term, 1883, in proceedings had in an attachment in equity under Code 1873, chapter 148, section 11, instituted by Philip Rohr against A. H. Dorr, a non-resident of this State, and Robert Gibboney, trustee of Thomas L. Preston, as garnishee, holding funds belonging to said Dorr; and on an injunction awarded on the prayer of said Gibboney's executrix in her cross-bill, which, after his death, she

filed in the circuit court. In July, 1861, an order of publication was executed against the non-resident defendant, who appealed from the decree rendered to this court.

Opinion states the case.

*J. H. Gilmore* and *Ro. M. Hughes,* for the appellants.

· *Fulkerson & Page, J. H. Wood, J. W. Caldwell,* and *A. H. Blanchard,* for the appellees.

LEWIS, P., delivered the opinion of the court.

Among the errors assigned is the action of the circuit court in overruling the plea of the statute of limitations filed by the appellant as the administrator of the defendant, Dorr; and we are of opinion that the assignment is well taken.

In computing the time for the running of the statute, the suit must be deemed to have been commenced as against Dorr when he was brought in by the amended bill in December, 1879. At that time the claims asserted in the bill were clearly barred, if they were ever valid. The suit was not founded on the sealed contracts between the parties, but was for work and labor done, and other items, as to which the five years' limitation prescribed by the statute is applicable.

It appears that Rohr, the plaintiff, was a sub-contractor under Dorr & Co. to build certain sections of the Virginia and Kentucky railroad. There were two contracts under seal between the parties—one executed in 1857, the other in 1860. The present suit was originally instituted in July, 1861. To the bill one Robert Gibboney, trustee, and various other persons alleged therein to be debtors of the defendant, Dorr, were made parties defendant. At the same time an attachment was issued against the estate of Dorr as a non-resident defendant,

and there was an order of publication; but Dorr was a citizen and resident of the State of New York, and could not, therefore, be lawfully proceeded against by an order of publication. For the war was then raging, and all communication between the inhabitants of the Confederate States, on the one hand, and of those States adhering to the Union, on the other, was prohibited by law. Hence the execution of the order of publication was without any legal effect whatever. It did not constitute notice, either actual or constructive. The non-resident defendant had he seen the order as published, could not have lawfully obeyed it, even if he had had the physical power to have done so; and consequently all proceedings founded upon it are void. This is well settled, both on principle and authority.

"It is a principle of natural justice, of universal obligation, that before the rights of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him." Chief Justice Marshall, in *The Mary*, 9 Cranch, 126: "It is a rule, founded on the first principles of natural justice, that a party shall have an opportunity to be heard in his defence, before his property is condemned." *Windsor* v. *McVeigh*, 93 U. S. 274. "It lies at the very foundation of justice that every person who is to be affected by an adjudication should have the opportunity of being heard in his defence." *Underwood* v. *McVeigh*, 23 Gratt. 409. "A different result would be a blot upon our jurisprudence and civilization." *McVeigh* v. *United States*, 11 Wall. 259.

In *Dean* v. *Nelson*, 10 Wall. 158, the case turned on the validity of certain proceedings to foreclose a mortgage, taken during the war within the Union lines, whilst the defendants were absent from home within the Confederate lines, and were not permitted to return. Notice to appear was published in accordance with the laws of Tennessee, where the proceedings

were conducted; and the defendants not appearing, an order of foreclosure was accordingly made. The Supreme Court held the proceedings to be void. "The defendants," said the court, "were within the Confederate lines at the time, and it was unlawful for them to cross those lines. * * A notice directed to them and published in a newspaper was a mere idle form. As to them the proceedings were wholly void."

The case of *Lasere* v. *Rocherean,* 17 Wall. 437, is to the same effect.

In *Earle* v. *McVeigh,* 91 U. S., 503, certain judgments were held to be "absolutely void," which had been obtained during the war upon notices posted at the front-door of what had been the defendant's "usual place of abode" in the city of Alexandria, after the occupation of the city by the Federal forces, and seven months after the defendant, with his family, had left the city and taken up his residence within the Confederate lines, where he remained until the war was over. The court in its opinion again declared it to be "a maxim of universal application" that "no man shall be condemned in his person or property without notice and an opportunity to be heard in his defence."

In other words, notice and an opportunity to be heard are essential requisites to the jurisdiction of all courts, even in proceedings *in rem,* and judgment without jurisdiction is a nullity. *Galpin* v. *Page,* 18 Wall. 350; *ex parte Lange,* Id., 163; *Fultz* v. *Brightwell,* 77 Va., 742; 1 Smith's Lead. Cas. (8th Am. ed.), p. 1156—notes to *Crepps* v. *Durden.*

It is needless to cite further authority to show that the circuit court did not acquire jurisdiction of the person of the non-resident defendant by any of the proceedings that were had during the war. And assuming that jurisdiction was acquired of the person of the garnishee, Gibboney, who being within the territorial limits of the court, was summoned to answer,

yet no decree could be rendered affecting the fund in his hands belonging to the non-resident defendant, which could bind the latter without his being a party to the suit.

It is contended, however, by counsel for appellees that jurisdiction of the *res*—that is, the fund attached, was acquired by service of process on the garnishee with the attachment order thereon endorsed, and that further notice was not essential to maintain the jurisdiction. But this position is altogether untenable.

It is true that attachment being a summary remedy, a seizure of the estate of a non-resident defendant, or the levy of an attachment upon it, may precede the giving of notice. But by the express provisions of the statute, now contained in section 20, of chapter 148, of the Code (1873), notice is required to be given to the debtor; and if under such circumstances as existed during the late war it becomes legally impossible to give notice, the jurisdiction as to him comes to an end. It is the same in legal effect as if under ordinary circumstances no attempt were made to give notice at all, or as if jurisdiction having been acquired and notice given, a hearing were denied, as was actually the case in *Windsor* v. *McVeigh*, and in *Underwood* v. *McVeigh*, *supra*, in both of which cases the proceedings were held to be void, and therefore impeachable collaterally.

Another answer to the position of the appellees is, that the attachment was issued under the eleventh section of the above mentioned chapter of Code, which provides that "at the time of or after the institution" of a suit against a non-resident defendant, an attachment may be sued out, &c., and here, for the reasons already stated, the suit as against Dorr had not been lawfully commenced when the attachment issued.

The theory upon which in proceedings purely *in rem*, a seizure is notice and gives jurisdiction is, that the *res*, if not in the possession of the owner himself, is intrusted to an agent, who

has the power, and whose duty it is to represent the owner and protect his interests. But assuming that an attachment proceeding is of a complex character, and in some of its features partakes of the nature of a proceeding *in rem*—*St. Claire* v. *Cox,* 106 U. S. 350; 2 Smith's Lead. Cas. (8th ed.) p. 965, *et seq*— can such a principal apply to a case like the present? Does a garnishee represent his creditor, the principal defendant? And did service of process on the garnishee in the present case, any more than the order of publication, give notice to Dorr, who, being a resident of New York, could not have been lawfully communicated with? We unhesitatingly answer in the negative, and consequently no lien was acquired by the attachment which was issued in July, 1861. In other words, as against Dorr, it was unavailing for any purpose. Nor is there anything in the opinion in *Pennoyer* v. *Neff*, 95 U. S. 714, in conflict with this view.

The case of *Cooper* v. *Reynolds*, 10 Wall. 308, has no application to the question before us. It was not decided in that case that a judgment where there is an attachment, a seizure of the *res* is good, though no other notice be given, for there the attachment was issued and notice was published "according to law;" but the point decided was, that a judgment rendered in attachment proceedings which are irregular merely cannot be impeached collaterally. This is not disputed, and no such question arises in the present case. Here the proceedings in question are void, and they are assailed directly on appeal. The plea of the statute of limitations, interposed by the administrator of Dorr after the amended bill was filed, ought therefore to have been sustained. For before the plea was filed there had been no appearance or act done, either by Dorr in his lifetime, or by his personal representative after his death, by which the right to question the validity of the proceedings was waived. He was for the first time brought into

the case by the amended bill, in December, 1879, which the
court granted leave to file, after setting aside the proceedings
subsequent to the attachment, and the claims asserted were
then barred, since the running of the statute was not sus-
pended by the previous proceedings, all of which as against
him were void.   *Isaacs* v. *Price,* 2 Dillon, 347; *Miller* v. *M'In-
tyre,* 6 Pet. 61.

It has been argued here, however, that the running of the
statute was suspended by Dorr's departure from the State in
April, 1861, and his continued absence from the State there-
after.   But this argument cannot be sustained consistently
with the statute which enacts as follows: "Where any . such
right as is mentioned in this chapter shall accrue against a
person who had *before resided in this State,* if such person shall,
by departing without the same   *   *   obstruct the prosecu-
tion of such right, the time that such obstruction may have
continued, shall not be computed as any part of the· time
within which the said right might or ought to have been prose-
cuted."   Code 1873, ch. 146, sec. 20.

Here the defendant had not before resided in this State, but,
as the bill alleges, was a citizen and resident of New York.
Hence the case is not within the saving of the statute above
quoted.   4 Min. Insts. 514, *et seq.*   Moreover, as the question
was not raised by replication to the plea or otherwise in the
court below, it cannot be raised for the first time in the appel-
late court.   *Miller* v. *M'Intyre, supra; Piatt* v. *Vattier,* 9 Pet.
405; 1 Bart. Ch. Pr. 85.

The circuit court also erred in enjoining the appellant, as
administrator, from collecting the decree of the federal court
in the case of *Dorr* v. *Gibboney's Executrix.*

The material facts relating to the matter are these: In 1859,
Thos. L. Preston executed to Robert Gibboney, as trustee, a
deed of trust for the benefit of his creditors, of whom Dorr

was one. The debt due by Preston to Dorr, and thus secured, amounted to $2,650. This debt Rohr, the plaintiff in the present suit, sought to attach when he instituted his suit, as we have seen, in July, 1861, and accordingly Gibboney was made a party defendant, and was summoned to answer, &c. About the same time proceedings were commenced in the Confederate States court at Abingdon to sequestrate the debt, on the ground that it was due to an alien enemy, to-wit, Dorr, a citizen of New York. It being suggested, however, in those proceedings that the debt had been attached in the Rohr suit, an order was made by the Confederate court directing the money to be paid by the trustee to the Confederate receiver, to be by him loaned out, or invested in Confederate securities, to await the decision of the Rohr suit. Accordingly, Gibboney paid the money as directed to the receiver, who loaned the same to Rohr. No further steps appear to have been taken in the matter by the Confederate court. Subsequently, by a decree of the court below, Rohr was adjudged to be entitled to the money as a credit on the alleged indebtedness of Dorr to him.

After the close of the war, Dorr, ignoring the proceedings that had been had, brought his suit in the circuit court of the United States for the western district of Virginia against the executrix of Gibboney, who in the mean time had died, and at the May term, 1878, obtained a decree for the full amount of the Preston debt, and an execution on this decree went into the marshall's hands to be levied. The case is reported in 3 Hughes, 382.

In the progress of the cause in the lower court, the executrix of Gibboney asked leave to file a cross-bill, which was granted. In the cross-bill she alleged that her testator, in his lifetime, had in effect paid the Preston debt as garnishee into the State court. And she insisted that she ought to be protected by the process or order of the court against the levy and

collection of the execution in the marshall's hands. When the cause came on to be heard, the prayer of the cross-bill was granted; that is to say, the appellant, as administrator, was "perpetually enjoined from proceeding to collect the principal and interest decreed by the circuit court of the United States" as aforesaid.

This was erroneous. We have already shown that the circuit court did not acquire jurisdiction, either of the person or property of the non-resident defendant, by any of the proceedings had during the war; consequently, the case, as against the appellant, stands in precisely the same attitude as if no process of garnishment had been issued at all. Besides, it appears very clearly from the record that the money was paid by Gibboney, not under an order of the State court, but to the receiver of the Confederate States, under an order of the Confederate court. That order was as follows: "Confederate States, by John W. Johnston, receiver, *v.* Robert Gibboney, trustee for Thos. L. Preston. This cause came on this 1st day of August, 1862, to be heard, * * and it being represented to the court by the said receiver, and also by the said Gibboney, that one Phillip Rohr served process of attachment upon said Gibboney, claiming a debt against A. H. Dorr, and seeking to have the debt due from Thos. L. Preston to A. H. Dorr applied towards its satisfaction. And the said Gibboney, trustee as aforesaid, being ready to pay the money, but ignorant of the proper person to whom to make payment, it is ordered that said Gibboney, trustee as aforesaid, pay the said debt with interest, due to A. H. Dorr, to John W. Johnston: And it is ordered that said Johnston loan out said money, taking bond with good security; or if unable to do so, invest the same in 8 per cent. Confederate bonds, or seven per cent. treasury notes, to await the decision of the suit brought by said Rohr against said Dorr, and said Johnston is required to report to this court. And this cause is continued."

On the back of this order is endorsed the following receipt:

"$3,137.15. Received of Robert Gibboney, trustee of Thos. L. Preston, three thousand one hundred and thirty-seven dollars and fifteen cents, paid me under the within decree.

"August 1, 1862.        John W. Johnston, Receiver."

It is thus apparent that the case is the same in legal effect, as against Dorr's estate, not only as if there had been no process of garnishment, but as if the debt had been formally sequestrated, and the money had been paid into the Confederate treasury. And if such had been the case, it is clear, under the law as now settled, that the order of the Confederate court would be no protection to the trustee in a suit against him by the rightful owner of the fund so sequestrated. *Dewing* v. *Perdicanes*, 96 U. S. 193; *Williams* v. *Bruffy, Id.* 176; *Stevens* v. *Griffith*, 111 *Id.* 48.

It was so decided by the circuit court of the United States, in the exercise of its rightful jurisdiction, in the case of *Dorr* v. *Gibboney's Executrix, supra*, and the matter is now *res judicata.*

Moreover, a judgment or decree of a federal court cannot be enjoined by a State court. The circuit court of the United States and State courts are tribunals independent of each other, and nothing is better settled than that the one cannot lawfully interfere with the proceedings of the other. And the rule obviously applies! as well after judgment or decree as at any anterior stage of the proceedings; for execution is called the life of the law, and the jurisdiction of a court is not exhausted until its judgment is satisfied.

This is a rule founded not merely in comity, but on necessity. Thus, for example, the plaintiff, in an execution issued from a court of the United States, is enjoined from collecting it by an order of a State court, or *vice versa.* He disobeys the

order of injunction, and is imprisoned for contempt, where-upon the court whose process is enjoined interferes in his behalf to discharge him from custody. The result is an unseemly conflict of jurisdiction, causing not merely embarrassment in the administration of justice, but other and more serious consequences.

The question first arose in *Diggs* v. *Wolcott*, 4 Cranch, 179, and it was there held that a circuit court of the United States cannot enjoin proceedings in a State court. Indeed, the federal courts are expressly prohibited by an act of congress, passed in 1793, from granting injunctions "to stay proceedings in any court of a State." And the prohibition extends to all cases except where otherwise provided by a law relating to proceedings in bankruptcy. Revised Statutes (U. S.), sec. 720.

In *McKim* v. *Voorhies*, 7 Cranch, 279, the converse proposition was decided, namely, that a State court has no jurisdiction to enjoin a judgment of a circuit court of the United States. And these adjudications have been since recognized as correct expositions of the law on this subject. In *Riggs* v. *Johnson County*, 6 Wall. 166, the court say: "Circuit courts (of the United States) and State courts act separably and independently of each other, and in their respective spheres of action the process is issued by the one is as far beyond the reach of the other as if the line of division between them was traced by landmarks and monuments visible to the eye." See also *Peck* v. *Jenness*, 7 How. 612; *Freeman* v. *Howe*, 24, *Id.*, 450; *Haines* v. *Carpenter*, 91 U. S. 254; *Dial* v. *Reynolds*, 97, *Id.*, 340; 2 Story's Eq., sec. 900.

This sufficiently disposes of the case. Other questions were discussed by counsel, but it is unnecessary to consider them. The decree will, therefore, be reversed, and a decree entered here in conformity with this opinion.

DECREE REVERSED.