# Richmond

E. Frank O'Hara, et als. v. The Pittston Company.

April 21, 1947.

Record No. 3176.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*John J. Wicker, Jr., Seymour M. Heilbron, George M. Jaffin* and *Chas. Winkelman*, for the appellants.

*R. Grayson Dashiell, William W. Crump, James V. Hayes, Paul J. Quinn* and *Donovan, Leisure, Newton, Lumbard & Irvine*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This appeal is a sequel to *Adams* v. *United States Distributing Corp.*, 184 Va. 134, 34 S. E. (2d) 244, 162 A. L. R. 1227 (*certiorari* denied, 327 U. S. 788, 66 S. Ct. 807, 90 L. Ed. 647), and, like it, arises out of the merger of United States Distributing Corporation, a Virginia corporation, with its principal office in the city of Richmond, with The Pittston Company, a Delaware corporation, under the name of the latter, which became effective on December 31, 1942. A number of persons holding stock in the United States

Distributing Corporation dissented from the merger. Nineteen of these, including Maurice D. Adams and E. Frank O'Hara, aptly termed by the trial court as "members of the Adams group," instituted an equity suit in the Law and Equity Court of the city of Richmond against the United States Distributing Corporation for the determination and recovery of the value of their stock. We shall refer to this proceeding as "the equity suit."

Shortly after the commencement of this equity suit The Pittston Company instituted in the Chancery Court of the city of Richmond a proceeding under Code, section 3822, as amended, against all of the dissenting stockholders, including the members of the Adams group, for the determination of the "fair cash value" of the stock of the dissenters "as of the day before the vote for the agreement of consolidation or merger was cast," namely, December 21, 1942, as required by the statute, and a settlement therefor. For brevity's sake we shall refer to this as "the appraisal proceeding."

All of the members of the Adams group were non-residents and not amenable to process within the jurisdiction, and since they did not voluntarily appear it was necessary, under the statute, that an order of publication be issued against them. However, before this could be done, these dissenters sought and obtained a decree in the equity suit, which they had instituted, enjoining The Pittston Company from proceeding against them in the appraisal proceeding. This was over the objection of The Pittston Company which contended that the appraisal proceeding was the exclusive remedy for valuing the stock of the dissenters.

This injunction expired by its terms on November 27, 1943, and was not extended. Although the appraisal proceeding was then in its initial stage, The Pittston Company at that time took no steps to make the members of the Adams group parties thereto, nor did these stockholders attempt to intervene therein. Thus the two suits proceeded along independent courses.

On September 5, 1944, a decree was entered in the equity

suit referring the matter to a commissioner in chancery for the purpose of ascertaining the value of the stock of the dissenting members of the Adams group, and outlining the principles by which the commissioner should be guided. From this decree adjudicating the principles of the cause, the members of the Adams group sought and were allowed an appeal and *supersedeas* on November 15, 1944.

On June 6, 1945, on the cross-assignment of error of the United States Distributing Corporation, we dismissed the equity suit, holding that the appraisal proceeding under Code, section 3822, as amended, was the exclusive remedy which must be pursued by all of the dissenting stockholders in order to have their stock valued and paid for. *Adams v. United States Distributing Corp., supra.* Such dismissal, we said, was "without prejudice to the appellants to pursue, in the proper court, their remedy for the fair cash value of their stock pursuant to the provisions of Code, section 3822, as amended." (184 Va., at page 151, 34 S. E. (2d), at page 252.) We denied a rehearing on September 14, 1945, and the Supreme Court of the United States denied *certiorari* on March 11, 1946.

In the meanwhile the appraisal proceeding in the Chancery Court of the city of Richmond had progressed. All of the dissenting stockholders, except the members of the Adams group, appeared, were served with process, or were made parties by an order of publication. The decree entered in the appraisal proceeding providing for the order of publication recited that the members of the Adams group were excepted therefrom because of the injunction which they had obtained in the equity suit.

On November 15, 1943, in the appraisal proceeding, three appraisers were appointed to fix the fair cash value of the dissenters' stock as of the required date. On July 28, 1944, the appraisers filed their written report, together with the transcript of the testimony heard by them, in which they fixed the fair cash value of the preferred stock in the United States Distributing Corporation at $55 per share. They reported that the common stock had "no fair cash value." Both the dissenting stockholders who had been made parties

to the appraisal proceeding and the merged corporation filed exceptions to the report.

On December 6, 1944, the lower court entered a decree overruling all exceptions to the report, confirming it, and adjudicating that the values of the two classes of stock fixed by the appraisers were "just." In terms the decree adjudicated that "the amount so determined shall be final and conclusive *on all parties to this proceeding.*" (Emphasis added.)

Continuing, the decree awarded a "final judgment" against The Pittston Company, the merged corporation, which was ordered "to pay to each of the said dissenting stockholders the amounts set out in the last column opposite their respective names." The list of the judgment creditors contained none of the names of the members of the Adams group. Indeed, the decree contained a recital that the members of this group "have not appeared herein, but have obtained from the Law and Equity Court of the city of Richmond, Virginia, an injunction prohibiting the said petitioner (The Pittston Company) from prosecuting this proceeding against them in this court," and that the appraisal proceeding was being "retained and continued on the docket" pending the outcome of the appeal which had been taken in the equity suit.

On July 9, 1945, about a month after our decision in *Adams* v. *United States Distributing Corp., supra,* The Pittston Company filed a written motion in the appraisal proceeding for an order of publication against the members of the Adams group for the purpose of making them formal parties to the latter proceeding. The motion recited that these particular dissenting stockholders, by reason of the injunction, had neither been served with process nor had they appeared in the appraisal proceeding which had been retained on the docket for the purpose of bringing them before the court. Action on this motion was deferred[1]

---

[1] The record does not disclose at whose instance the postponement was made. Since the decree directed the clerk to "mail an attested copy" thereof to counsel for the Adams group, we presume that he was not present when it was entered.

pending the action of the appellate court on the petition for a rehearing which was then before us in the equity cause of *Adams* v. *United States Distributing Corp., supra.*

After we had denied a rehearing in the equity suit, The Pittston Company renewed and was granted its motion for an order of publication against the members of the Adams group, who, for the first time, in November, 1945, were served with process and made formal parties to the appraisal proceeding.

After the maturity of the order of publication The Pittston Company, on December 13, 1945, filed its written motion, praying that "it be ordered to pay to each of the defendants named in the order of publication," namely, the members of the Adams group, "the sum of $55, with interest from January 1, 1943, to October 22, 1944, as and for the fair cash value" of each share of preferred stock of the United States Distributing Corporation owned by him or her, that being the amount which the court by its decree of December 6, 1944, had ascertained and fixed as the fair cash value of such stock as was held by certain other dissenting stockholders then parties to the proceeding. The movant further prayed that each member of the Adams group be required to surrender his or her stock upon the payment to each of the respective amounts arrived at in this manner.

The members of the Adams group opposed this motion. They tendered a petition in which they alleged that at the time the value of $55 per share had been fixed and determined by the court they were not parties to the appraisal proceeding, had taken no part therein, either directly or indirectly, and were not bound thereby. They alleged that the fair cash value of each share of preferred stock owned by them as of December 21, 1942, was "greatly in excess of the aforesaid $55 per share, and probably in excess of $184 per share," and that they were "entitled to an independent appraisal by independent, unbiased appraisers who have had no previous connection with this matter."

Accordingly, they prayed that the court appoint "three

disinterested persons, residents of this State," "to proceed with their investigation and appraisal" of the "fair cash value of petitioners' stock as of the specified time."

The trial court entered a decree rejecting the petition of the members of the Adams group, and holding, in substance, that these dissenting stockholders were bound by the value of $55 per share which the court in its decree of December 6, 1944, had found and determined was the "fair cash value" of the stock. The Pittston Company was ordered to pay to the respective dissenters the amounts due them for their shares of stock, with interest, and the dissenters were ordered, upon the receipt of such amounts, to surrender and deliver to The Pittston Company their shares of stock, properly endorsed.

From this decree the present appeal has been taken by the members of the Adams group.

The written opinion of the trial court, as we understand it, bases its ruling on two grounds.

First, it said, that in our opinion in the companion case of *Adams* v. *United States Distributing Corp., supra,* we held that in a judicial proceeding or proceedings to fix the value of dissenters' shares, all dissenting stockholders of the same class should receive the same value for their shares, and that it, the lower court, was bound by this holding. Since, it said, it had been judicially ascertained that other dissenters should receive $55 per share for their stock, these appellants should receive the same.

Second, it said, "The judgment of this court entered on December 6, 1944, was a judicial determination that the fair cash value of the preferred stock (of the United States Distributing Corporation) on December 21, 1942, was $55 a share;" that the matter was *res judicata,* and hence the members of the Adams group, the appellants, were bound thereby.

In the former appeal we dealt with the sole question whether dissenting stockholders, in recovering the value of their stock, must follow the remedy prescribed in Code, section 3822, as amended, or had the alternative right to

proceed by a suit in equity. We held that the statutory remedy was exclusive. *Adams* v. *United States Distributing Corp., supra.*

During the course of the opinion we said this (184 Va., at pages 145, 146, 34 S. E. (2d), at pages 249, 250):

"To adopt the contention of the appellants and hold that the remedy afforded by the statute is merely cumulative and not exclusive would lead to confusion and to inequitable results among various dissenting stockholders, even where the identical corporation is involved and the sole question is that of the value of the dissenters' shares. * * *

" * * * If the appellants are sound in their view, then they would be free to pursue their equitable remedy in any court, State or Federal, in which they might acquire jurisdiction of the parties. Under this theory the dissenting stockholders could institute actions for the value of their shares in State and Federal courts throughout the country, provided, only, that proper service of process could be effected.

"If such a multiplicity of suits could be instituted, and if all such courts had equal and concurrent jurisdiction, the inescapable result would be that instead of all dissenters from a particular merger receiving equal treatment, those who elected to pursue different remedies, or like remedies in different courts, would inevitably find themselves with widely varying judgments in their favor. * * *

"It is inconceivable, we think, that the legislature ever intended that dissenting stockholders of the same corporation and of the same class should receive different values for their shares. On the contrary, we think the design of the Virginia statute is to assure to the dissenting stockholder that he will be fully compensated for the value of that of which he has been deprived by the merger, and no more."

The first sentence in the last-quoted paragraph, the trial court thought, compelled it to limit both the appellant dissenters and the merged corporation to the value of the stock theretofore arrived at.

Detached from its context the language is susceptible of

that interpretation. But when read with its context and in the light of the question then before us, it will be seen that it had no such design or purpose.

What we meant was that the statutory method of appraisal was designed to give to dissenting stockholders of the same class equality of treatment, and that this could more nearly be accomplished by limiting the proceedings for the valuation of their respective shares to the courts designated in the statute, rather than by leaving the parties "free to pursue their equitable remedy in any court, State or Federal, in which they might acquire jurisdiction of the parties."

Under the terms of the appraisal statute,[2] if the principal office of the corporation in which the dissenter holds stock is located in the city of Richmond, jurisdiction of the appraisal proceeding is limited to the Chancery Court of that city, but if the corporation's principal office be located in another city, the proceeding may be brought in the "circuit or corporation court of the city." In the latter case one stockholder might select one of these courts and another might select the other. The statute does not require that such separate suits be consolidated. Conceivably, then, the two proceedings might result in different judgments for the value of stock of the same class held by different persons.

Therefore, while it is, of course, desirable that all dissenting stockholders who resort to a judicial proceeding or proceedings to recover the value of their stock should receive the same amount per share, the statute does not require or guarantee such a result.

The appellee (The Pittston Company) asks us to uphold the trial court's ruling that its ascertainment of the fair cash value of the stock at $55 per share, as fixed by the decree of December 6, 1944, was *res judicata* and binding on the appellants under a number of theories. None of these, however, is sufficient to overcome the argument of the appellants that as to this matter they have never had their day in court,—a

---

[2] See note 3.

right which is guaranteed to them under the due process clauses of the Federal and Virginia Constitutions.

The first contention of the appellee is that the proceeding under the appraisal statute is an *in rem* or *quasi in rem* proceeding,—a suit to fix the value of a share of a certain class of stock in a certain corporation as of a certain time, regardless of who is the owner thereof. An analysis of the situation before us will disclose the fallacy of this contention.

■ In Burks Pleading and Practice, 3d Ed., sec. 41, p. 67, the author says: "An action is *in personam* when its object is to obtain a personal judgment against the defendant, upon which a general execution may be awarded directing the collection of the judgment out of any property of the defendant anywhere to be found. It is *in rem* when it seeks to affect particular portions of his property only."

In 1 C. J. S., Actions, sec. 52, p. 1148, the distinction between the two classes of actions is thus defined: "Actions *in personam* and actions *in rem* differ in that the former are directed against specific persons and seek personal judgments, while the latter are directed against the thing or property or status of a person and seek judgments with respect thereto as against the world."

■ In a *quasi in rem* proceeding the direct object is to reach and dispose of property, or some interest therein, owned by the defendant. 1 Am. Jur., Actions, sec. 46, p. 437.

■ A proceeding *in rem* or *quasi in rem* must be predicated on a *res* within the jurisdiction of the court upon which the court is acting. *Austin* v. *Royal League*, 316 Ill. 188, 147 N. E. 106, 109; 1 Am. Jur., Actions, sec. 46, p. 437.

In the present proceeding this essential element is lacking. There is no *res* within the jurisdiction of the court.

Again, in order that a valid judgment may be rendered in an *in rem* or *quasi in rem* proceeding, every person who has an interest in the *res* must have legal notice of the proceeding and an opportunity to be heard. Burks Pleading and Practice, 3d Ed., sec. 361, p. 688; *Dorr* v. *Rohr*, 82 Va. 359,

363, 3 Am. St. Rep. 106; *Moore* v. *Smith*, 177 Va. 621, 626, 627, 15 S. E. (2d) 48, 49, 50.

Admittedly, there was no service of process on the appellants in the present proceeding before the entry of the judgment by which it is claimed they are bound.

A reading of the appraisal statute, the pertinent portion of which is copied in the margin,[3] shows that it contemplates an action *in personam* by the dissenting stockholder against the merged or consolidated corporation to recover the value of his stock after the same has been fixed and determined by the court. This is so whether the proceeding be instituted by the stockholder against the corporation, or whether the merged or consolidated corporation commences the proceeding against the stockholder.

The statute provides that when the stockholder shall have signified his dissent to the merger, "he shall be entitled to receive from such consolidated or merged corporation the fair cash value of his stock as of the day before the vote for the agreement of consolidation or merger * * * was so cast."

[3] Code, section 3822, as amended by Acts of 1922, ch. 380, pp. 625, 632-637:

"If any stockholder of either of the corporations so consolidated or merged, who shall not have given assent thereto, and who shall be dissatisfied therewith, shall signify such dissent by notice in writing served on the president, * * * of the consolidated or merged corporation, or on the statutory agent of such consolidated or merged corporation, * * * at any time within three months after the date of said meeting of his corporation to act on the consolidation or merger agreement, he shall be entitled to receive from such consolidated or merged corporation the fair cash value of his stock as of the day before the vote for the agreement of consolidation or merger of his corporation was so cast as aforesaid, which fair cash value, if not agreed on between such dissenting stockholder and the consolidated or merged corporation, shall be determined in the manner hereinafter provided; * * * . If such dissenting stockholder and the merged or consolidated corporation do not, within one month from the date of the service of said notice by such dissenting stockholder upon the merged or consolidated corporation, agree upon the fair cash value of the stock of such dissenting stockholder as of the day before the vote for the agreement of consolidation or merger was cast, the dissenting stockholder may, upon reasonable notice to the consolidated or merged corporation, given in the manner in which the notice of his dissent is hereinbefore directed to be given, apply to the circuit court of the county or the circuit or corporation court of the city wherein the principal office of the corpora-

If the dissenting stockholder and the merged corporation do not agree upon the value within the prescribed time, "the dissenting stockholder may, upon reasonable notice to the consolidated or merged corporation," apply to the designated court "to have the fair cash value of *his stock*, as of the date aforesaid, appraised" in the prescribed manner. (Emphasis added.) Or, "the consolidated or merged corporation may likewise, upon reasonable notice to such dissenting stockholder," "apply to said court * * * to have the fair cash value of the stock *of such dissenting stockholder* as of the date aforesaid, appraised" in a similar manner. (Emphasis added.)

Continuing, the section provides that "if notice of the consolidated or merged corporation to apply to said court for the appointment of appraisers is not served upon such stockholder within this State, and, if such stockholder does not appear before said court on the day fixed in the notice, the petition or application of the consolidated or merged corporation for the appointment of appraisers to appraise and

tion of such dissenting stockholder is located, or to the judge of said courts in vacation, or to the chancery court of the city of Richmond, or to the judge thereof in vacation, in the event the principal office of the corporation of such dissenting stockholder is located in the city of Richmond, to have the fair cash value of his stock, as of the date aforesaid, appraised by three disinterested persons, residents of this State, appointed by the court; or the consolidated or merged corporation may likewise, upon reasonable notice to such dissenting stockholder, either served upon him personally or sent to him by registered mail at his last known post-office address, as the same appears on the books of the corporation, apply to said court, or the judge thereof in vacation, to have the fair cash value of the stock of such dissenting stockholder as of the date aforesaid, appraised by three disinterested persons, residents of this State, appointed by such court; and it shall be the duty of the said court to which application is made, or the judge thereof in vacation, to appoint the appraisers on reasonable notice, on the application of either party; provided, however, that if notice of the consolidated or merged corporation to apply to said court for the appointment of appraisers is not served upon such stockholder within this State, and, if such stockholder does not appear before said court on the day fixed in the notice, the petition or application of the consolidated or merged corporation for the appointment of appraisers to appraise and determine the fair cash value of the stock of such stockholder shall be continued to such time as the court may designate, and an order of publication shall be entered against such stockholder, requiring

determine the fair cash value of the *stock of such stockholder* shall be continued to such time as the court may designate, and an order of publication shall be entered *against such stockholder*, requiring *him to appear* before such court \* \* \* at such time and place as may be designated in the order." (Emphasis added.)

Upon the maturity of the order of publication, the statute continues, "the court shall appoint three disinterested persons, residents of this State, to appear and determine the fair cash value of the *stock of such stockholder*." (Emphasis added.)

It is further prescribed that the appraisers so appointed shall report to the court "the fair cash value of the stock *of such dissenting stockholder*" as of the prescribed date. (Emphasis added.)

The statute gives either "such stockholder" or the consolidated or merged corporation the right to except to the appraisers' report.

Should the court set aside the appraisers' report it "shall proceed to ascertain the fair cash value of the stock *of such*

him to appear before such court, or the judge thereof in vacation, at such time and place as may be designated in the order,. which order shall be published once a week for two successive weeks in a newspaper published or having a general circulation in the county or city in which the proceeding is pending; and upon the day fixed in such order, or at any subsequent time to which the matter may be continued, whether such stockholder shall have appeared or not, the court shall appoint three disinterested persons, residents of this State, to appear and determine the fair cash value of the stock of such stockholder.

"It shall be the duty of the appraisers so appointed to investigate the condition of the corporation of such dissenting stockholder, and to report to the court, or to the judge thereof in vacation, as promptly as possible, the fair cash value of the stock of such dissenting stockholder as of the day before the vote for the agreement of consolidation or merger of his corporation was so cast as aforesaid, \* \* \* ; provided, however, that the appraisers shall give notice of the time and place of their first meeting to such dissenting stockholder and to the consolidated or merged corporation by mailing the same to their last known postoffice address by registered mail at least ten days before the date of the meeting, \* \* \* . The finding of a majority of the appraisers shall stand as the action of the appraisers. The appraisers shall make their report to the court, or to the judge thereof in vacation, in writing, and shall return with their report such evidence as they have taken during their investigation. If such stockholder, or the consolidated or merged corporation, be dissatisfied with the fair cash value

*stockholder*, as of the day aforesaid, and *shall enter judgment against the consolidated or merged corporation accordingly, which judgment may be collected as other judgments of a court of competent jurisdiction are collectible*, and its finding judgment shall be *final and conclusive upon all parties to the proceeding.*" (Emphasis added.)

If no exceptions are filed to the appraisers' report it shall be confirmed "and the amount thereof shall be *final and conclusive upon all parties to the proceeding.*" (Emphasis added.)

"And in any case in which the report of the appraisers is confirmed as hereinbefore directed, the amount thereof shall immediately become and be a *final judgment* of the court *against the consolidated or merged corporation and may be collected as other judgments of a court of competent jurisdiction are by law collectible.*" (Emphasis added.)

Upon payment or tender of payment by the consolidated corporation of the value of such stock so ascertained, "*such*

as determined by the appraisers, he or it, as the case may be, may within thirty days from the date the report of the appraisers is filed in court, or with the judge thereof in vacation, and upon reasonable notice to the other party given in the manner hereinbefore provided, apply to the said court, or the judge thereof in vacation, to set aside the finding of the appraisers; and the court, or the judge thereof in vacation, if of the opinion that the valuation is just, shall deny the application and, after thirty days from the date the report of the appraisers was filed, shall confirm the same and the amount thereof, but if the court, or the judge thereof in vacation, be of opinion that the valuation is not just, the said report and the amount thereof shall be set aside, and, when set aside, the court, or the judge thereof in vacation, shall proceed to ascertain the fair cash value of the stock of such stockholder, as of the day aforesaid, and shall enter judgment against the consolidated or merged corporation accordingly, which judgment may be collected as other judgments of a court of competent jurisdiction are collectible, and its finding judgment shall be final and conclusive upon all parties to the proceedings; and if no application is made within said thirty days after the said report is filed, the court, or the judge thereof in vacation, shall immediately confirm the report, and the amount thereof shall be final and conclusive upon all parties to the proceeding. And in any case in which the report of the appraisers is confirmed as hereinbefore directed, the amount thereof shall immediately become and be a final judgment of the court against the consolidated or merged corporation and may be collected as other judgments of a court of competent jurisdiction are by law collectible.

"Upon payment or tender of payment by the consolidated or merged

*dissenting stockholder* shall deliver up his certificate of stock to the consolidated * * * corporation." (Emphasis added.)

It will be observed that the language used does not require *all dissenting stockholders* to surrender their shares upon these terms. It is limited to "such stockholder" who is before the court.

Plainly, therefore, the statute deals only with the rights of dissenting stockholders who are made parties to the proceeding. There is nothing in the language to indicate that the rights of any other dissenters are thereby affected. There is no suggestion that the value of the stock of a particular class, fixed in an appraisal proceeding, is to be conclusive and binding on other dissenters who are not parties to the proceeding.

The fact that the statute provides that the judgment entered in favor of the stockholder for the value of his shares "may be collected as other judgments of a court of competent jurisdiction are collectible" is indicative of a judgment

corporation of the value of such stock, so ascertained, such dissenting stockholder shall deliver up his certificate of stock to the consolidated or merged corporation, if any has been issued, and, if none has been issued, shall make a due assignment to the consolidated or merged corporation of all his rights in respect thereto, and shall mark the said judgment satisfied, and the consolidated or merged corporation may thereafter issue and dispose of the stock to which such dissenting stockholder would have been entitled under the agreement of consolidation or merger had he not dissented therefrom; and if such dissenting stockholder shall refuse to receive the value so ascertained when payment is tendered to him, or shall refuse or fail to surrender and deliver up his certificate of stock upon such tender of payment, or shall refuse or fail to mark said judgment satisfied, the consolidated or merged corporation shall have the right to deposit to the credit of the court in which such proceeding is pending the value of the stock of such stockholder, so ascertained and determined, and the court, or the judge thereof in vacation, shall enter an order reciting the deposit and declaring said judgment satisfied, and discharging the consolidated or merged corporation from any or all further liability thereunder, and shall direct the clerk of said court to mark said judgment satisfied; and thereafter the rights of such stockholder under his stock in the consolidating or merging corporation shall cease and determine, and his sole rights shall be to receive the cash so deposited, upon surrender to the consolidated or merged corporation of the certificate or certificates representing the same, * * * ."

*in personam.* See Burks Pleading and Practice, 3d Ed., section 41, p. 67, *supra.*

Moreover, an examination of the record shows that the present proceeding was instituted and conducted as a suit by The Pittston Company, the merged or consolidated corporation, as plaintiff, against certain named dissenting stockholders as defendants. Only the restraining order in the equity proceeding prevented the entry of an order of publication against the appellants.

The decree of December 6, 1944, confirming the appraisers' report, stated in terms that "the amount so determined shall be final and conclusive *on all parties to this proceeding.*" (Emphasis added.) It entered a personal judgment against The Pittston Company in favor of those named dissenting stockholders who had been served with process in the proceeding for the value of their stock as fixed in the decree.

There is, then, no foundation for the contention that the appraisal proceeding was an action *in rem* or *quasi in rem,* which fixed the value of the stock of all dissenting stockholders, whether parties to the proceeding or not, at $55 per share on the day in question. The statute was not designed for this purpose, nor was the suit so shaped or directed.

Next, it is said that the appellant dissenters are bound by the decree of December 6, 1944, fixing the value of the shares of certain other dissenters, under the doctrine of class representation. The argument is that the interests of the appellant dissenters were precisely the same as those of the other dissenters who appeared in the litigation, that both groups were interested in obtaining the highest possible recoveries for the value of their stock, that the appraisal proceeding was vigorously contested on both sides, and that hence the interests of the appellants were well represented and protected.

The doctrine of class representation is a well-recognized exception to the general rule that only parties or their privies are bound by a judgment or a decree. 1 Freeman on

Judgments, 5th Ed., section 435 *ff*., p. 950 *ff*; 39 Am. Jur., Parties, section 44 *ff*., p. 917 *ff*; *Hansberry* v. *Lee*, 311 U. S. 32, 61 S. Ct. 115, 85 L. Ed. 22, 132 A. L. R. 741; *Morrow* v. *Vaughan-Bassett Furniture Co.*, 173 Va. 417, 4 S. E. (2d) 399.

■ As Mr. Justice Stone pointed out in *Hansberry* v. *Lee, supra* (311 U. S., at page 41), the doctrine is usually applied in cases in which "the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction or because their whereabouts is unknown or where if all were made parties to the suits its continued abatement by the death of some would prevent or unduly delay a decree."

■ But, as is said in 39 Am. Jur., Parties, section 50, p. 923, "There is obviously no room for an application of the doctrine when actual appearance of a few persons sought to be represented can be enforced without material difficulty, * * * "

In the case before us the parties sought to be barred were neither numerous nor unknown. They were nineteen in number. They were actually named in the original petition filed in the appraisal proceeding, and but for the injunction would have been made formal parties by an order of publication. Indeed, they were actually made parties in this manner after the dismissal of the equity suit.

Prior to the time these appellants were made formal parties to the appraisal proceeding, there was nothing in the record to indicate that that proceeding had been instituted or prosecuted as a class suit with a view to binding those dissenters who were not actual parties. Indeed, as has been said, the proceeding was instituted and conducted as a proceeding *in personam* against certain named stockholders who were actual parties thereto, and each of whom was awarded a personal judgment against the merged corporation for the value of his stock.

Not until eleven months after the entry of the decree by which it is claimed that the appellants are bound was

there any suggestion that the proceeding was a class suit and that the appellants were parties thereto by representation.

■ It is well settled that a representative or class suit must have been instituted or conducted as such. *Gonzalez v. Roman Catholic Archbishop,* 280 U. S. 1, 19, 50 S. Ct. 5, 8, 74 L. Ed. 131; 1 Freeman on Judgments, 5th Ed., section 436, p. 953; 39 Am. Jur., Parties, section 53, p. 926.

■ We have been cited to no authority nor have we been able to find any to support the contention that a suit, commenced and conducted as an action *in personam* against certain named parties, can be converted into a class suit after the entry of a judgment therein.

It is further argued that the appellants are bound by the decree of December 6, 1944, because, it is said, they had actual notice of the pendency of the appraisal proceeding and had the right to intervene and take an active part therein. Not only did they fail to intervene, it is said, but invoked the aid of another court to restrain the appellee from making them actual parties to the proceeding. In other words, the argument is that the appellants are estopped by the judgment because they were afforded an opportunity to be heard in the proceeding and declined it.

It is true that in some situations one who is not a formal party to a proceeding, but who has actual knowledge thereof, must intervene in order to protect his interests, and if he fails to do so he is nevertheless bound by the judgment. This is because of the relation which the would-be bystander occupies toward one of the litigants.

A common example of this is one who is an indemnitor or insurer, either by operation of law or by contract, of the party who is being sued with respect to the subject-matter of the litigation. See 30 Am. Jur., Judgments, section 237, pp. 969, 970; 1 Freeman on Judgments, section 445 ff., p. 973 ff; *Robbins* v. *Chicago,* 71 U. S. (4 Wall.) 657, 18 L. Ed. 427; *Washington Gaslight Co.* v. *District of Columbia,* 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712;

*Guaranty Title, etc., Corp.* v. *Virginia-Carolina Tie, etc., Co.*, 152 Va. 698, 148 S. E. 815.

*Robbins* v. *Chicago, supra*, relied on by the appellee, is such a case. In that case Robbins, the owner of a lot in the city of Chicago, left unguarded an excavation adjacent to the street. A pedestrian fell into the excavation, was injured, and recovered a judgment against the city for damages for his injuries. Although Robbins knew of the pending litigation against the city, he took no part in defending the suit.

It was held that since Robbins was liable as indemnitor to the city for the judgment which the pedestrian had recovered against it, he was directly interested in the subject-matter of the litigation between the pedestrian and the city and had a right to defend the suit. Consequently, it was held, since he knew of the pending suit and failed to take part in the defense, he was bound by the judgment which the pedestrian had recovered against the city.

The principle was again applied by the Supreme Court of the United States in a similar situation in *Washington Gaslight Co.* v. *District of Columbia, supra.*

It was applied by us with respect to an insurer in *Guaranty Title, etc., Corp.* v. *Virginia-Carolina Tie, etc., Co., supra.*

But in the case before us the Adams group of dissenters occupied no such relation as indemnitors or insurers of the other group of dissenters who were actually made parties to the appraisal proceeding. The members of the Adams group were under no obligation to the other dissenters to defend or take part in the appraisal proceeding. Both groups of dissenters were merely concerned with their respective rights against the merged or consolidated corporation.

It is well settled that unless a person occupies some relationship toward the litigant which makes the former liable, either by operation of law or by contract, to indemnify the latter with respect to the subject-matter of the litigation, such stranger to the litigation is not bound by the

judgment which is rendered therein merely because he knew of the suit and might have intervened therein.

As tersely expressed in 30 Am. Jur., Judgments, section 220, pp. 953, 954, "The right to intervene in an action does not, in the absence of its exercise, subject one possessing it to the risk of being bound by the result of the litigation, under the doctrine of *res judicata.*"

Freeman on Judgments, Vol. 1, 5th Ed., section 410, pp. 896, 897, has this to say on the subject: "Notwithstanding the right of a party, under certain conditions, to bind another by a judgment by giving him notice and an opportunity to defend, generally one not a party to an action is not bound by the judgment therein merely because he knew of the pendency of the action, *even though he attempted to enjoin its prosecution,* or offered to become a party, but was denied that privilege." (Emphasis added.)

And continuing, the same author says (section 411, pp. 898, 899): "One who has been interpleaded is bound by the result of the litigation, as are the parties who institute the proceeding. * * *

"But the mere right to intervene, if not exercised, does not make one privy to the judgment, unless the possessor of the right authorizes and directs an active party to defend on his behalf. * * * And the same is true of one whose petition has been dismissed, or whose attempt to intervene is defeated by the adverse party, or whose claim has been withdrawn before judgment. * * * "

In *Gratiot County State Bank* v. *Johnson*, 249 U. S. 246, 249, 250, 39 S. Ct. 263, 63 L. Ed. 587, 589, Mr. Justice Brandeis said: "The rule is general that persons who might have made themselves parties to a litigation between strangers, but did not, are not bound by the judgment." Other authorities on the subject are collected in that opinion.

Nor are the appellant dissenters bound by the judgment in the appraisal suit because they enjoined the prosecution of that proceeding against them. 1 Freeman on Judgments, 5th Ed., section 410, p. 897, *supra.*

In this connection it should be observed, as has been said,

that the injunction which restrained The Pittston Company from making the appellants parties to the appraisal proceeding expired by its terms on November 27, 1943, and was not extended. The appraisal proceeding was at that time in its initial stage. The Pittston Company was free then to have made the appellants parties to the proceeding, and the appellants were likewise free to have intervened therein.

Certainly, The Pittston Company, as the plaintiff in the appraisal proceeding, the purpose of which was to settle the rights between it and all dissenting stockholders, was under as compelling a duty to bring the appellants before the court as the appellants were to intervene in the proceeding.

Manifestly, what happened is that during the period from the date of the expiration of the injunction and the final outcome of the appeal in the *Adams* v. *United States Distributing Corp. Case, supra,* The Pittston Company voluntarily refrained from making the appellants parties to the appraisal proceeding and the appellants voluntarily refrained from intervening therein. Hence neither side is in a position to criticize the other for its inaction.

On the whole we are of opinion that the lower court erred in holding that the appellants were bound by the decree of December 6, 1944, and were not entitled to an appraisal of the fair value of their stock. The appellants' petition for the appointment of appraisers should have been allowed.

The decree appealed from is reversed and the cause is remanded for further proceedings in harmony with the views here expressed.

*Reversed and remanded.*

HOLT, C. J., dissenting.

The United States Distributing Corporation, a Virginia corporation with its principal office in Richmond, desired to merge with The Pittston Company, a Delaware corporation.

Their plans for merger were submitted to the proper authorities of both States. They were approved and a new corporation, known as The Pittston Company, took over the holdings of both parent corporations. At the date of the merger, The Pittston Company held most of the stock of the United States Distributing Corporation. Stock not so held stood in the name of individuals. Some of them came into the new company under the terms tendered them in the merger; others dissented. A number of these dissenters were advised that Code, section 3822, was but cumulative, and that the power of a court of equity to pass upon the value of their stock stood unimpaired. They thereupon instituted a suit in the Law and Equity Court of the city of Richmond in which they asked that the value of their stock be determined and claimed that each share of preferred stock was worth $184.00. The Pittston Company had been advised that the provisions of said Code, section 3822, were exclusive and thereupon brought its suit in the Chancery Court of the city of Richmond.

This difference of opinion finally reached us and was decided in *Adams* v. *United States Distributing Corp.*, 184 Va. 134, 34 S. E. (2d) 244, 162 A. L. R. 1227, in which we held that the statutory provision governing mergers was exclusive. The net result of that decision is that the Chancery Court of the city of Richmond held that the fair cash value of the preferred stock held by these dissenters was $55.00 and not $184.00 per share. We there said:

"It is inconceivable, we think, that the legislature ever intended that dissenting stockholders of the same corporation and of the same class should receive different values for their shares. On the contrary, we think the design of the Virginia statute is to assure to the dissenting stockholder that he will be fully compensated for the value of that of which he has been deprived by the merger, and no more."

This statement needs no construction, for construction lies in the domain of ambiguity. A wayfaring man can understand what was meant. But to make assurance doubly sure,

we went ahead and set out the reason which led to that conclusion, and said:

"To adopt the contention of the appellants and hold that the remedy afforded by the statutes is merely cumulative and not exclusive would lead to confusion and to inequitable results among various dissenting stockholders, even where the identical corporation is involved and the sole question is that of the value of the dissenters' shares. For example, in the case at bar, those preferred stockholders, other than the appellants, who dissented from the merger and pursued the statutory remedy for the appraisal of the 'fair cash value' of their stock, in the Chancery Court of the city of Richmond, would have such value determined by the appraisers appointed by that court and subject to its approval, while the appellants in the present proceeding would have the value of their stock determined by a commissioner in chancery, subject to the approval of the Law and Equity Court of the city of Richmond. Unless the two tribunals worked in close harmony they might arrive at entirely different results, although the ultimate purpose is precisely the same.

"But that is not all. If the appellants are sound in their view, then they would be free to pursue their equitable remedy in any court, State or Federal, in which they might acquire jurisdiction of the parties. Under this theory the dissenting stockholders could institute actions for the value of their share in State and Federal courts throughout the country, provided, only, that proper service of process could be effected."

For reasons stated, to give to courts of equity general jurisdiction would lead to intolerable confusion. The construction which we are now giving to the statute is even more bewildering, for the same court is asked, with a straight face, to hold that this stock has more than one fair cash value.

We have once said each certificate of stock has a fair cash value of $55.00. That was a judicial determination, and we are now asked to hold by another judicial determination of the same court that it has a cash value of $184.00, or more.

There are fifteen of these dissenting stockholders. They

were not required to bunch their hits. Each of them might have filed a petition in substance like that filed by the fifteen. Under each petition, appraisers would have been appointed. If their findings had been adopted, we might find fifteen judicial determinations of the fair cash value of this stock. But that is not all. We cannot say as a matter of law that there are no other dissenters who have not yet come in. One of them might be an infant. Shall we wait until he grows up?

Moreover, we have held that the common stock has no value at all. These common stockholders might answer "Not so," and they might come forward and ask for other appraisals. Other judicial determinations might follow, and we would have the same court solemnly declaring that the fair cash value of these stocks varied with the judgments of the appraisers. If there is one thing certain, it is that each share of this stock on any given date should have the same value.

The dissenters, in their petition for appeal, appear to concede that taking it at its face value, the *Adams Case* is against them but relieve themselves from that burden by charging that it is *dicta*, while we now say that we never said it, or at least that we never meant to say it.

We might approach this proposition from another angle. These dissenting stockholders were parties by representation to the findings heretofore made. They need not have been served with process.

In *Morrow* v. *Vaughan-Bassett Furniture Co.*, 173 Va. 417, 4 S. E. (2d) 399, it was held to be unnecessary that a non-resident stockholder be made a party defendant when levied upon for a proper share of corporate debt since he might be a party by representation and that there need be no personal service of process. If a judgment can be given against them, for their share of indebtedness, by the same token a judgment may be given in their favor for their proportion of their company's assets if the company is to be dissolved. We may restate the bog into which our construction of this statute has led us:

The multiplicity of varying judgments of different courts of equity was one of the possibilities which the Legislature foresaw and undertook to correct by Code, section 3822. But plainly that is an instance of misplaced legislative confidence. It is now true that different courts of equity no longer have the power to enter varying judgments, but the same court now not only has the power to enter varying judgments, but it may have to do so under our judgment in the instant case. To hold that a statutory court, vested with exclusive jurisdiction, may find that the just cash value of one share of stock differs from the just cash value of another share of stock on a given date when both stocks are part of one issue is, in the language of the *Adams Case*, "inconceivable." There is no limit to the number or variety of possible judgments which may be entered under the rule approved in the instant case. Here we have once held that the value of each of the shares of stock is $55.00; we are now being asked to hold that it is $184.00, or more.

Of course the purpose of our statute is to treat all stockholders alike and to put an end to litigation—*sit finis litum.*