# 𝔖taunton

## WRIGHT MORROW, RECEIVER v. VAUGHAN-BASSETT FURNITURE COMPANY, INC.

September 13, 1939.

Record No. 2132.

Present, All the Justices.

The opinion states the case.

*T. E. Brannock* and *H. P. Burnett,* for the plaintiff in error.

*Jack M. Matthews, S. Floyd Landreth* and *Price Goodson,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

The Lumberman's Reciprocal Association was a corporation organized under the laws of the State of Texas and did business in sixteen other States, including Virginia. It assumed and agreed to pay losses which its subscribing members might suffer by reason of workmen's compensation acts. The subscribers, on their part, promised to pay an-

nually to this insurance company definite sums based on pay rolls. The Texas company was in substance a mutual benefit association, although the method adopted for the payment of assessments differed. Ordinarily levies are made as losses occur, or levies are made at the end of a year for those losses suffered during that period. Here, as we have seen, losses were based upon a pay roll percentage and not upon the sum of actual losses suffered during membership. The defendant became a member on March 1, 1928, and terminated its membership on March 1, 1930.

Such liability as attached must have been incurred during membership and while the company was in fact insolvent. 14 R. C. L. 970.

A suit was brought in the District Court of Travis county to wind up the affairs of the Texas company and on July 31, 1930, a receiver and trustee was appointed to carry this purpose into effect. It was held that insolvency dated from July 1, 1929, and on May 1, 1933, an assessment of 33% of premiums booked and earned from July 1, 1929, to July 31, 1930, was established as necessary to meet outstanding obligations. It was to collect 33% of defendant's liability that this action was brought.

The plea of the five-year statute of limitations has been interposed. Code 1919, section 5810. If the statute began to run from the date on which the defendant ceased to be a member, it is good; if from the date of the assessment, it is not. This action was instituted on September 1, 1936.

Under what is known as the *Glenn Cases—Lewis' Adm'r* v. *Glenn,* 84 Va. 947, 6 S. E. 866, and *Vanderwerken* v. *Glenn,* 85 Va. 9, 6 S. E. 806—it was held that the statute of limitations begins to run in favor of stockholders for amounts due upon unpaid stock subscriptions only from the time such assessments are made.

"As between a corporation and its stockholders, and as between creditors of the corporation and stockholders, where calls have been made by the company, and also by the court, the authorities are in conflict as to whether the statute begins to run from the maturity of the call by the company,

or from a call by the court. In Virginia the statute begins to run from the maturity of the call by the company. If no calls have been made by the company, but one has been made by the court, the statute begins to run from the maturity of the call made by the court." Burks' Pleading & Practice, p. 351.

The contingent liability of mutual assessment insurance companies came under review in *Swing* v. *Taylor & Crate,* 68 W. Va. 621, 70 S. E. 373. The court in that case said:

"The statute of limitations did not begin to run in favor of Taylor & Crate until the decree was made, assessing the policy holders. Their liability, it is true, existed from the issuance of their policies; but until the date of the decree it was only contingent. An action could not be brought upon such liability. It had to be made certain and absolute, either by corporate action or by judicial ascertainment, before an action would lie. Consequently the statute of limitations was not set in motion until June 11, 1901, the date of the Ohio decree."

Not only is it necessary that an assessment be made, but it is also necessary that notice of this assessment is required to convert what was a contingent liability into a definite obligation. 45 C. J. 61.

In *Federal Life Ins. Co.* v. *Risinger,* 46 Ind. App. 146, 91 N. E. 533, the court said:

"This principle applies with equal force where an insurance company is given the right to levy assessments and where no definite time is fixed for their payment. Such levy does not become binding upon the assured, and creates no liability against him, and affects no right which he possesses under the policy until notice has been given of the assessment, * * * ."

When the defendant ceased to be a member, its contingent liabilities, if any, were not known. There were four thousand subscribers to the Texas company, and so in the nature of things it could not be known until that company's affairs were audited; and they were not audited until after the Texas suit was brought. No sum certain was then due

and payable, and that had to be ascertained before any assessment could be levied; and it was from this date that the statute begins to run.

■ The defendant was not a party to the Texas suit, but that was not necessary. It was a party by representation, and that court had power to make the challenged assessment. *Vanderwerken* v. *Glenn, supra.* Nor has any change been brought about in this by Code, section 3843.

■ In *Reed & McCormick* v. *Gold,* 102 Va. 37, 45 S. E. 868, Judge Keith said:

"The act leaves the jurisdiction with the chancery court to 'settle and wind up the affairs of insolvent corporations,' and as a necessary incident thereto expressly reserves to the chancery court power to make 'assessments upon unpaid stock subscriptions;' * * * :"

■ See also, *Mountain Lake Land Co.* v. *Blair,* 109 Va. 147, 63 S. E. 751. It was there also held that the liability of a stockholder in a foreign corporation for its debts is to be determined by the laws of the State of the corporation.

■ In a note to 48 A. L. R., p. 669, the law is thus well stated:

"It seems well settled that a decree assessing stockholders of an insolvent corporation is conclusive against nonresident stockholders, although not served with process within the state in which it was rendered or made parties to the proceedings, in so far as the necessity for such decree and the amount of the assessment are concerned, where, under the laws of the state, the court has jurisdiction to enter such decree, and its determination is conclusive as to such questions. Such stockholder is, however, not precluded from litigating any matter which bears upon the extent or duration of his stock holdings, or other personal defenses, such as payment, the statute of limitations, applicable to his liability as distinguished from the liability of the corporation, and the like."

"The order authorizing an assessment, unless directly attacked and set aside by appropriate judicial proceedings, is conclusive as to the necessity for making the assessment.

The determination by the court of the amount of the indebtedness and the rate of assessment is conclusive on the members, and not subject to collateral attack." 32 C. J. 1044.

There are no procedural defects.

■ Having reached the conclusion that the statute of limitations cannot avail and that the assessment was regular, it only remains for us to ascertain if the claim of $519.33 is sustained by proof.

The defendant was a member of the Texas corporation from March 1, 1928, to March 1, 1930, and of course was a member of it from July 1, 1929, to March 1, 1930, during which time it has been adjudged to have been insolvent. The contract of subscription, section 9, provides that:

"The subscriber shall file with the attorney not later than the 15th day of each calendar month a complete and accurate written report of all remuneration earned during the preceding month by all employes not herein specifically excluded. If such report is not so received, the attorney may consider our pay roll as an amount equal to our average monthly pay rolls since we have been subscribers hereat, plus twenty per cent, for any month delinquent. Nothing herein, however, shall be held to waive the attorney's right to make audits of our pay rolls or our obligation to pay for any excess pay rolls subject to the conditions of the contract to be based hereon."

■ No new information was furnished and so the annual premiums continued as they were in the beginning, which was $2,572.47. Subscribers generally were liable for losses from July 1, 1929, to July 31, 1930, thirteen months, and they were assessed at 33% of this liability. But the defendant was a member during eight months of this period and liable for losses then incurred, or rather for its proper proportion of them. That the plaintiff reaches in this wise: Defendant's liability was limited to one additional annual premium deposit, which deposit was $2,572.47, and since it was a member during eight of the thirteen

months of insolvency, its ultimate liability was $1,573.80, 33% of which is $519.33.

It might be argued with plausibility that since the defendant was liable for only one additional premium deposit, and since it was a member for only eight months of the period of insolvency, there should be assessed against it eight-twelfths of its ultimate liability and not eight-thirteenths, a method of calculation which would somewhat increase the amount which it can be called upon to pay. But since the plaintiff cannot claim more than is demanded in its motion for judgment, it is limited to that demand, which should be allowed. This conclusion is sustained by the deposition of D. L. Dikeman, an auditor who examined and reported upon the financial condition of the Texas company.

The defendant further contends that in no event could it be held liable for more than 33% of $250 and bases that contention upon article 5 of the contract, which provides that "our liability shall not exceed one additional annual premium deposit." That $250 is at one place in the contract described as "deposit premium $250" and in another as "advance deposit $250." This $250 was an initial deposit and is something in addition to the annual premium deposit. This was the holding of the Texas court in making the 33% assessment. Since Dikeman's evidence stands uncontradicted, and since the annual premium deposit had not been changed, it was possible to say what the liabilities for eight months are and just what 33% of them is. This would not be true if the defendant's liability was a shifting one based upon losses and not upon a stated annual premium deposit.

The judgment of the trial court should be reversed and final judgment entered for the plaintiff in the sum of $519.33, with interest from May 1, 1933.

*Reversed.*