# WILLIAM R. GILMORE

## V.

# BASIC INDUSTRIES, INC., ET AL.

Record No. 840763

June 12, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Cochran, Retired Justice

*Ronald L. Smallwood (Herman Abady; Purcell, Cherry, Kerns & Abady,* on briefs), for appellant.

*Howard Feller (Robert E. Draim; McGuire, Woods & Battle,* on brief), for appellee, William B. Garrison, Jr.

*(Norman A. Kinnier,* on brief), for appellee, George W. Fix, Jr. Appellee Fix submitting on brief.

No briefs or arguments for appellees, Basic Industries, Inc., Cornelius F. Florman, Grayson I. McDougle, John T. Smook and Paul H. Coffey, Jr.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal, we decide whether the trial court erred in ruling that (1) statutes of limitations barred two counts of the plaintiff's motion for judgment, and (2) the plaintiff was liable for a defendant's attorneys' fees and expenses incurred in defending this action.

## I

On June 13, 1980, William R. Gilmore filed a three-count motion for judgment to recover damages resulting from a lending transaction which he entered into with Basic Industries, Inc. (Basic) on June 15, 1974. Count I alleged that Gilmore lent Basic $50,000 for which Basic executed a promissory note dated June 15, 1974, and payable January 15, 1975. Because Basic defaulted

on the note, it executed a second note for $50,000 on February 1, 1975, payable to Gilmore on July 2, 1975. Basic also defaulted on this note, and the trial court entered judgment in favor of Gilmore for the balance due, $40,000, plus interest and costs.

The court's ruling with respect to Count I is not challenged by Basic in this appeal. In Count II, Gilmore alleged that William B. Garrison, Jr., had breached a contract of pledge of collateral. The facts, gleaned from the pleadings, exhibits, and memoranda filed by the parties, are undisputed.

Garrison executed a collateral note, also dated June 15, 1974, whereby he promised to pay Basic $40,000 as the balance due for the purchase of 3,000 shares of Basic's common stock. The same instrument recites that the 3,000 shares were pledged by Garrison as collateral to secure Gilmore in his loan to Basic. Garrison also executed a pledge of collateral, pledging the shares to Gilmore as security for the loan.

Garrison's note to Basic was payable on January 15, 1975, and the pledged stock was to be transferred by Garrison to Gilmore on that date. Garrison made a $10,000 payment on the note on an unascertained date and a second $10,000 payment on April 3, 1979. Basic, in turn, made a $10,000 payment to Gilmore on April 3, 1979.

In a letter dated April 23, 1979, however, Garrison, by his attorney, advised Gilmore that he would not purchase the remaining shares of Basic's stock and, therefore, would not transfer the pledged stock to Gilmore as collateral for Basic's debt. By letter to Garrison dated May 11, 1979, Basic called upon Garrison to honor the stock subscription and demanded that its note be paid in full. Garrison made no further payments on his note to Basic, and Basic, in turn, made no further payments of principal to Gilmore.

The trial court held that Gilmore's claim against Garrison in Count II was time-barred. The court opined that the cause of action accrued on January 15, 1975, and, "[a]t the most," Gilmore had five years from that date to file suit. Gilmore appeals this ruling.

Gilmore relies upon *Morrow* v. *Vaughan-Bassett Furn. Co.*, 173 Va. 417, 4 S.E.2d 399 (1939), to support his contention that the statute of limitations did not begin to run until May 11, 1979, the date that Basic called upon Garrison to honor the stock subscription agreement and pay the balance due on the stock purchase. Prior to that date, according to Gilmore, Garrison had not

breached the pledge and therefore Gilmore's cause of action had not accrued. We do not agree.

■ In *Morrow*, we held that in a suit for unpaid stock subscriptions the statute of limitations begins to run from the date the subscriber is called for payment. *Id.* at 420-21, 4 S.E.2d at 400-01. It does not follow, however, that the limitation period for breach of a pledge of collateral runs from the date the stock subscription is called. Instead, the statute runs from the date the pledge contract is breached. In the present case, the date agreed upon for the delivery of the pledged stock was January 15, 1975. When Garrison failed to deliver the stock on that date, he breached his agreement, and Gilmore's cause of action accrued.

Because Gilmore filed suit more than five years* after January 15, 1975, his action is time-barred. Accordingly, we will affirm the trial court's dismissal of Count II.

## II

Count III of the motion for judgment contained a claim by Gilmore against Garrison, Cornelius F. Florman, John T. Smook, George W. Fix, Jr., Paul H. Coffey, Jr., and Grayson I. McDougle, individually and as agents for Basic (collectively, the defendants). Gilmore alleged that the defendants maliciously and willfully conspired to enter into a scheme to deceive him and to deprive him of money. He further alleged that the defendants knowingly made representations that were false and fraudulent with intent to deceive Gilmore and to induce him to make the loan to Basic.

On appeal, the parties tacitly agree that a five-year statute of limitations applies to the fraud action stated in Count III. We take no position on the correctness of this conclusion. *See House v. Kirby*, 233 Va. 197, 199, 355 S.E.2d 303, 305 (1987); *Pigott v. Moran*, 231 Va. 76, 81, 341 S.E.2d 179, 182 (1986). We will accept a five-year limitation period as the law of the case and only decide when the cause of action accrued.

■ An action for fraud accrues at the time the fraud is discovered, or when, by the exercise of due diligence, it ought to have been discovered. *See* former Code § 8-14; now Code § 8.01-249(1).

---

* Both parties agree that the longest limitations period for a contract in writing not under seal is five years. *See* former Code § 8-13; now Code § 8.01-246(2).

The defendants contend that the fraud should have been discovered by Gilmore on January 15, 1975, "as a result of the obvious defaults on the notes" by Basic and Garrison. The defendants further contend that Gilmore had actually discovered the alleged fraud no later than June 3, 1975, the date when Gilmore, by his attorney, wrote a letter to Basic complaining about Basic's failure to pay the $40,000 balance due on the note. In that letter, the attorney said, "Quite frankly it appears to me that there is a scheme to defraud William R. Gilmore of his money," and that if payment was not made within 10 days legal action would be taken.

Gilmore, on the other hand, contends that there were "numerous transactions between the parties" that obscured the defendants' fraudulent intent. He points to Basic's execution of the second note, Basic's remittance of over $30,000 in interest payments, additional assurances of payment made by the defendants, and arrangements made for repayment. Various other activities by the defendants led Gilmore to believe that they intended to pay the debt. For example, as late as April 3, 1979, Garrison's attorney stated in a letter that Garrison agreed that a $10,000 payment could be applied to interest and not to principal. Gilmore alleges that the fraud was not discovered by him until he received a copy of Garrison's letter dated April 26, 1979, wherein Garrison stated that he would cease making payments and would not purchase the stock that he had pledged as collateral.

In holding that Count III, the fraud action, was barred by the statute of limitations, the trial court accepted the defendants' contention, stating that "[a]t the most, [Gilmore] had five years to file suit from January 15, 1975, when, by the exercise of due diligence, he reasonably should have discovered the alleged fraud. (In fact by letter of June 3, 1975, then counsel for [Gilmore] accused Basic of fraud.)" The court based its ruling on the pleadings and exhibits thereto, memoranda and argument of counsel, and, *sua sponte*, rendered summary judgment for the defendants.

Summary judgment is inappropriate if any material fact is genuinely in dispute. Rule 3:18. The record shows that material facts were genuinely in dispute respecting when Gilmore discovered, or by the exercise of due diligence should have discovered, the alleged fraud. Gilmore's attorney's letter of June 3, 1975, may be probative, but we cannot say as a matter of law that it is conclusive of the issue.

Gilmore is entitled to a full and fair hearing so that, from all the evidence and reasonable inferences deducible therefrom, a fact finder, whether judge or jury, may determine when Gilmore discovered the alleged fraud, or by the exercise of due diligence ought to have discovered it. Thus, we hold that the trial court erred in summarily dismissing the fraud count.

### III

The trial court, on Garrison's motion, ordered Gilmore to "compensate and reimburse" Garrison in the amount of $5,733.40 for Garrison's attorneys' fees and expenses "incurred in the defense of this action." Gilmore assigns error to this ruling.

■ Ordinarily, in the absence of a statutory or contractual provision to the contrary, attorneys' fees are not recoverable by the prevailing litigant. *See Hiss* v. *Friedberg*, 201 Va. 572, 577, 112 S.E.2d 871, 875 (1960); *Norris* v. *Barbour*, 188 Va. 723, 741-42, 51 S.E.2d 334, 342 (1949).

Nothing in the record before us places this case within the ambit of any exception. We hold, therefore, that the long-standing general rule applies and the award of attorneys' fees and expenses was erroneous. Consequently, we will reverse the ruling of the trial court and vacate the award.

### IV

In sum, we will affirm the trial court's dismissal of Count II of the motion for judgment. We will reverse the trial court's dismissal of Count III and remand that count for an evidentiary hearing to determine when the five-year limitations period began to run on the alleged fraud cause of action. We also will reverse and vacate the trial court's award of attorneys' fees to Garrison's counsel.

*Affirmed in part,*
*reversed in part,*
*and remanded.*