## CIRCUIT COURT OF ISLE OF WIGHT COUNTY

James H. Arthur, Jr.,
and Amelia M. Arthur

v.

Patricia E. Warner

December 29, 2000

Case No. CH00000041

BY JUDGE D. ARTHUR KELSEY

The complainants, James and Amelia Arthur, filed this equity action to enjoin a neighbor, Patricia Warner, from violating the terms of the subdivision's restrictive covenants. At the conclusion of the trial, the litigants agreed to a Consent Decree granting the request for injunctive relief with certain conditions. Because the parties disagreed over the complainants' request for an award of attorney's fees, they submitted this issue to the Court for resolution. For the following reasons, the Court denies the request for an award of prevailing-party attorney's fees to the Arthurs.

The Arthurs live in a subdivision known as Scot's Landing in Smithfield, Virginia. *See* Bill of Complaint ¶ 1, at 1; Answer ¶ 1, at 1. Patricia Warner lives next door. *See* Bill of Complaint ¶ 2, at 1; Answer ¶ 1, at 1. The original developer, The Lawson Group, Ltd., recorded its subdivision plat in 1988 along with a set of restrictive covenants. *See* Bill of Complaint ¶ 3-5, at 1-2; Answer ¶ 1, at 1. The parties agree that the plat and covenants apply to their properties. *Id.*

After purchasing her property, Warner built a "detached structure" on the corner of the lot. *See* Bill of Complaint ¶ 7, at 2. This structure, the Arthurs argued, violated the height and set-back limitations in the restrictive covenants. At the conclusion of the trial of this case, the Court held (and

Warner conceded) that the detached structure violated the restrictive covenants. The parties then agreed to a Consent Decree providing for certain modifications to the structure that would bring it into compliance. *See* Consent Decree (Dec. 22, 2000).

In their Bill of Complaint, the Arthurs asked the Court to award them "attorney's fees incurred in this proceeding." Bill of Complaint ¶ C, at 3 (prayer for relief). At the Court's request, the parties submitted post-trial briefs on this issue. Neither party requested leave to submit any additional evidence on the attorney's fee issue. The Court's decision, therefore, must be predicated solely on the factual record developed at trial and the stipulations made in the pleadings.

The Arthurs rely on two grounds for their request for attorney's fees. First, they assert that two provisions of the restrictive covenants authorize an award. This argument requires a textual analysis of the covenants in search of a contractual basis for the award. Second, they argue that a fee award should be ordered pursuant to the Virginia Property Owners' Association Act, Va. Code Ann. § 55-508 *et seq.* (Michie 1995 & Supp. 2000). This argument requires a review of this particular statute, along with the now superseded Subdivided Land Sales Act, in search of a legislative basis for a fee award.

The American Rule forbids an award of attorney's fees absent a contractual, statutory, or equitable basis for it. As the Virginia Supreme Court recently made clear: "We have repeatedly stated that the general rule in this Commonwealth is that in the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party." *Russell Co. Dept. of Social Services v. O'Quinn*, 259 Va. 139, 142, 523 S.E.2d 492, 493 (2000) (quoting *Prospect Devel. Co. v. Bershader*, 258 Va. 75, 92, 515 S.E.2d 291, 300 (1999)); *see also Gilmore v. Basic Industries, Inc.*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987). Several exceptions exist to this rule, including one discovered last year,[1] but none applies to this case.

The Arthurs argue that the restrictive covenants provide a contractual basis for an award of attorney's fees. They point to paragraph 15 of the covenants, which provides:

---

[1] In *Prospect Development Co.*, 258 Va. at 92, 515 S.E.2d at 301, the Virginia Supreme Court broke new ground by holding that in a "fraud suit, a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party." Other exceptions to the American Rule exist for malicious prosecution and false imprisonment suits, cases against trustees defending the trust in good faith, and cases alleging contract breaches that trigger third-party litigation, and certain spousal support cases. *Id.* (citations omitted).

> The lots within the subdivision together with the buildings and improvements located thereon shall at all times be kept and maintained in such manner that they will not constitute a nuisance to, or injure the value of, other lots within the subdivision, and the owner or owners thereof shall keep and maintain the same free and clear of all unsightly weeds, trash, bushes, building materials, old vehicles, and the like. In the event of any breach of this covenant the undersigned, its designated representative, the Architectural Design Review Committee, their successors or assigns, shall have the authority to have such nuisance or unsightly condition abated at *the cost and expense* of the owner or owners of the lot or lots on which said condition exists.

Restrictive Covenants ¶ 15, at 3 (Exhibit 1) (emphasis added). This provision, however, permits an award of costs and expenses only for a "breach of *this* covenant" — *i.e.* a violation of paragraph 15. *Id.* (emphasis added). Paragraph 15 forbids conditions that constitute a nuisance or injure property values. Neither applies here. The detached structure does not come close to fitting the definition of a nuisance, *see generally Black's Law Dictionary* at 1093-95 (7th ed. 1999), and no evidence shows that the structure devalued the Arthurs' property in any measurable way. In their pleadings and at trial, the Arthurs relied solely on the restrictive covenants outlined in paragraphs 1, 6, and 7. These covenants deal with detached buildings, height restrictions, and set-backs. *See* Bill of Complaint ¶ 7, at 2. As a result, the "cost and expense" provision in paragraph 15 (even if such language were construed to include attorney's fees, a doubtful conclusion at best) cannot be a contractual basis for an award of fees to the Arthurs.

The Arthurs also rely on paragraph 16, which provides that a party seeking to enforce "any of the covenants or restrictions herein" may recover "*damages* or other dues for such violation." Restrictive Covenants ¶ 16, at 4 (Exhibit 1) (emphasis added). The Arthurs correctly view this provision as providing a general remedy for violations of any of the covenants, including the ones involved in this suit. Their argument fails, however, in its contention that the word "damages" should be construed to include attorney's fees.

Neither the plain meaning of the word "damages" nor its contextual meaning within the covenants suggests that it includes counsel fees incurred in litigation with alleged violators. "In general, attorney's fees are not recoverable as damages." *East Texas Salvage & Mach. v. Duncan*, 226 Va. 160, 161, 306 S.E.2d 896, 897 (1983) (permitting contractual award where provision specifically mentions attorney's fees). Because the restrictive

covenants fail to include attorney's fees as a recoverable item, a provision doing so cannot be added judicially under the pretext of applying canons of construction. *See generally Musselman v. The Glass Works*, 260 Va. 342, 347, 533 S.E.2d 919, 921-22 (2000) ("We will not, by construction, insert a term in a contract that the parties to the contract omitted.").

To be sure, if the Court turned to canons of construction for guidance, they would offer the Arthurs no aid. Restrictive covenants "are not favored and must be strictly construed." *Sloan v. Johnson*, 254 Va. 271, 274, 491 S.E.2d 725, 727 (1997) (citing *MidState Equipment Co. v. Bell*, 217 Va. 133, 140, 225 S.E.2d 877, 884 (1976)); *Anderson v. Lake Arrowhead Civic Assoc.*, 253 Va. 264, 269, 483 S.E.2d 209, 211 (1997). And if the restrictions themselves are to be strictly construed, so too should be the provisions drafted to enforce those restrictions. Strictly construed, the term "damages" cannot fairly be deemed to include attorney's fees.

Failing to find a contractual basis for their claim for attorney's fees, the Arthurs rely upon the Virginia Property Owners' Association Act, Va. Code Ann. § 55-508 *et seq.* (Michie 1995 & Supp. 2000). That statute includes a provision stating:

> Every lot owner, and all those entitled to occupy a lot shall comply with all lawful provisions of this chapter and all provisions of the declaration. Any lack of such compliance shall be grounds for an action or suit to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, maintainable by the association, or by its executive organ or any managing agent on behalf of such association, or in any proper case, by one or more aggrieved lot owners on their own behalf or as a class action. *The prevailing party shall be entitled to recover reasonable attorneys' fees and costs expended in the matter.*

Va. Code Ann. § 55-515(A) (emphasis added). This attorney's fee remedy applies only to property subject to Title 55, Chapter 26, which includes "developments subject to a declaration, as defined herein, initially recorded after January 1, 1959, associations incorporated or otherwise organized after such date, and all subdivisions created under the former Subdivided Land Sales Act (§ 55-336 *et seq.*)." Va. Code Ann. § 55-508.

In 1998, the Virginia General Assembly superseded the Subdivided Land Sales Act, Va. Code Ann. § 55-336 *et seq.*, with extensive amendments to the Property Owners' Association Act. Under the 1998 amendments, a development within the definition of a "subdivision" under the former

Subdivided Land Sales Act now falls within the reach of the Property Owners' Association Act. *See* 1998 Va. Acts of Assembly, chaps. 32, 623. In addition, the statutory definitions in the superseded Subdivided Land Sales Act should be deemed to "correspond" to analogous terms defined in the Property Owners' Association Act. *Id.*; Va. Code Ann. § 55-508.

The Arthurs may avail themselves of the attorney's fee provision in § 55-515(A) only if Scot's Landing qualifies (i) as a "development subject to a declaration" as defined in the Property Owners' Association Act, or (ii) as a "subdivision" under the former Subdivided Land Sales Act.[2] Va. Code Ann. § 55-508. Scot's Landing fails both tests. First, the property cannot be deemed a development subject to the Property Owners' Association Act because no land has been set aside as "common areas with respect to which any person, by virtue of ownership of a lot, is a member of an association and is obligated to pay assessments provided for in a declaration." Va. Code Ann. § 55-509. Second, the property cannot be a subdivision within the meaning of the former Subdivided Land Sales Act due to the lack of any "common areas and common facilities" and because the subdivision has less than the lowest minimum threshold of thirty lots. Va. Code Ann. § 55-337(4)(b).

The Arthurs disagree with this analysis, claiming that the Scot's Landing restrictive covenants should be deemed to correspond with the definition of "declaration" contained in the Property Owners' Association Act. They also assert that paragraphs 2 and 17 of the restrictive covenants authorize amendments as well as the installation of an architectural design review committee. As the Arthurs see it, these covenants give them standing to seek an attorney's fee award pursuant to § 55-155(A).

The Arthurs overlook, however, the statutory definitional requirement that the development impose assessments for the maintenance of a "common area" available to dues-paying lot owners. *See* Va. Code Ann. § 55-509. The Arthurs presented no evidence at trial suggesting that the developer of Scot's Landing set aside common areas available to lot owners in exchange for periodic assessments. Given the absence of any factual grounds to justify the inference, paragraphs 2 and 17 of the restrictive covenants cannot be viewed as a reasonable basis to predict a future "common area" set-aside for which lot owners will be charged assessments.

Under the American Rule, the Arthurs' request for an award of attorney's fees must rest either on contractual or statutory grounds. The restrictive

---

[2] The parties agree that no lot owners' association exists or has ever existed, thus eliminating a possible third basis for applying the Property Owners' Association Act.

covenants provide no contractual basis for an award, and the Virginia Property Owners' Association Act fails to support the request with a statutory basis for an award. The Court, therefore, denies the Arthurs' request for prevailing-party attorney's fees. It is so ordered.