## CIRCUIT COURT OF APPOMATTOX COUNTY

Commonwealth of Virginia

    v.

Appomattox County
Board of Supervisors

August 9, 2002

Case No. (Chancery) CH000001-01

BY JUDGE CHARLES E. POSTON

Today the court denies the Commonwealth of Virginia's "Amended Motion for an Award of Costs and for an Award of Expenses Under Rule 4:12." All parties submitted memoranda in support of their respective positions, and the court heard argument of counsel on July 24, 2002.

By order entered January 4, 2000, the judges of the Tenth Judicial Circuit of Virginia, which includes the Circuit Court of Appomattox County, commenced this cause by requiring the Members of the Board of Supervisors of Appomattox County to:

> show cause why a Writ of Mandamus should not be issued commanding them to cause the court facilities of the County of Appomattox to be made secure, put in good repair, or rendered otherwise sufficient, and to proceed to cause the necessary work to be done.

The judges and the supervisors engaged in a series of discussions to address the problem, but no resolution was reached. At the request of the judges, the

Chief Justice, on September 18, 2001, designated the Honorable Charles E. Poston, Judge of the Fourth Judicial Circuit, to preside over this cause.[1]

Because the supervisors filed no responsive pleadings or other acknowledgement of the pendency of this cause, the court sua sponte entered an order on September 19, 2001, directing the supervisors to file responsive pleadings not later than October 10, 2001. On the last day for filing responsive pleadings under the court's order, the supervisors filed their initial pleadings.

The supervisors' initial responsive pleading in essence admitted that the courthouse facilities were "insecure or out of repair, or otherwise insufficient."[2] The pleading stated:

> The Respondents are aware that the facilities accommodating the various courts and officials thereof serving the County of Appomattox, Virginia, have certain deficiencies and are in need of renovation.

A pretrial conference was held on October 30, 2001, for the primary purpose of selecting a trial date and other dates for the completion of various pretrial tasks. At this conference, the supervisors advised the court that there would be no request for the court to appoint a five-member panel to review the court facilities in question and make recommendations as authorized by Virginia Code § 15.2-1643.

Another pretrial hearing was conducted by telephone on December 4, 2001, to address the Commonwealth's motion for partial summary judgment. The Commonwealth asserted that the supervisors had admitted in their responsive pleadings that the court facilities were inadequate, leaving only the remedy at issue. The following colloquy occurred between the court and counsel for the supervisors during the hearing:

---

[1] Virginia Code § 15.2-1643(B) provides that in such causes the Chief Justice "shall assign a judge of a circuit remote from the circuit wherein the repairs are alleged to be necessary" to preside over the matter. The City of Norfolk is the only jurisdiction in the Fourth Judicial Circuit. Judge Poston had been designated to hear an earlier case related to the courthouse disagreement. In that mandamus proceeding, styled *John B. Baker et al. v. Members of the Board of Supervisors*, Law Docket Number 22-00, certain citizens petitioned the court to require the supervisors to submit a proposal for building the courthouse on a non-contiguous parcel of land to the voters in an election pursuant to Virginia Code § 15.2-1644. This cause was settled and dismissed.

[2] Va. Code § 15.2-1643(A).

THE COURT: Does the County concede that the courthouse itself is in need of repair?

MR. BYRD: Yes, Your Honor.

THE COURT: Okay.

MR. BYRD: I'm sorry. Jim, I'm not misspeaking, am I?

MR. CORNWELL: That's correct. We wouldn't have spent 40 years working on plans to fix the courthouse up if we were in disagreement on that.

Transcript, 11-12.

There can be no doubt that all parties agreed that the courthouse facilities were "insecure or out of repair, or otherwise insufficient" by December 4, 2001, at the latest. Indeed, by order entered December 20, 2001, the court so found in an agreed order endorsed by the supervisors' counsel as "seen and consented to." The following paragraph was included in that order:

Based upon the papers on file with the Court and the representations of the parties at the hearing held on December 4, 2001, the Court hereby adjudges, orders, and decrees that the court facilities of Appomattox County as a whole are "insecure or out of repair, or otherwise insufficient," as provided for in Virginia Code § 15.2-1643. . . .

Trial was set for March 20, 2002, but before that date, counsel evidently attempted to resolve the matter. On March 20, 2002, upon joint motion of the parties, the court stayed the proceedings for sixty days. An agreed Stay Order contained the following significant paragraph:

3. The architects shall forthwith meet and confer and attempt to agree on a set of preliminary schematic plans for both a renovation of the existing courthouse and construction of a new courthouse (the "Joint Plans"). In attempting to formulate the Joint Plans consistent with the requirements of Va. Code §§ 15.2-1638 and 15.2-1643, with consideration given to the *Virginia Courthouse Facility Guidelines*, the architects shall be governed solely by their professional expertise and judgment and shall not be constrained by the views of either party.

The architects met, conferred, and agreed on a set of plans as contemplated by the order.

A consent·decree entered on May 10, 2002, dissolved the stay. The Commonwealth accepted the Joint Plans and advised the court that either the plans for renovation or the plans for construction of a new courthouse would be acceptable. The supervisors, however, rejected the Joint Plans that addressed renovation and submitted their own plan. They agreed with the Joint Plans addressing construction of a new facility if the court were to require the replacement of the existing courthouse. That consent decree provided:

> 5. After trial, in issuing its mandamus pursuant to Va. Code § 15.2-1643, this Court will decide whether it will require the Board to perform the work, construction, or repairs as set forth in the Joint Renovation Plans (Exhibit 1) proposed by the Commonwealth, or the work, construction, or repairs as set forth in the Modification Plan (Exhibit 6) proposed by the Board; and
>
> 6. To the extent that an alternative plan for an entirely new courthouse is relevant in this matter, the parties agree that the Joint New Courthouse Plans (Exhibit 2) reflect the work, construction, or repairs necessary to make the Appomattox County court facilities secure, in repair, and otherwise sufficient, and shall be admissible at trial.[3]

Thus, the parties, by submitting this decree jointly,[4] not only framed the issues but also prescribed the available remedies.

The issues were tried to the court by testimony heard ore tenus, exhibits duly introduced, and argument of counsel on May 17, 2002. At the conclusion of the evidence and argument of counsel, the court found that the Joint Plans for renovation or new construction would, if used, cause the court facilities to be secure, in repair, or otherwise sufficient. The court also found that the Modification Plan proposed by the supervisors would not cause the court facilities to be secure, in repair, or otherwise sufficient. That portion of the transcript of the trial of May 17, 2002, recording the court's reasoning in reaching its judgment is incorporated into this opinion as if written herein verbatim.

---

[3] The exhibits mentioned refer to exhibits attached to the decree. The decree provided that the Joint Plans and Modification Plans could be introduced into evidence at trial.

[4] Counsel for both parties endorsed the decree "We ask for this." without any objection.

The court took care to preserve the supervisors' discretion to the extent possible. It did not look to any remedy other than those prescribed by the parties in the consent decree of May 20, 2002. The court did not modify any of those remedies in any manner. Indeed, the court gave the supervisors the choice of whether to construct a new facility or renovate the existing facility. The decree set times by which certain actions were to be completed, and the length of time permitted between each action exceeded that which the supervisors' own architect testified would be sufficient. The first of those deadlines required the supervisors to advise the court by June 30, 2002, as to whether a new facility would be constructed or the existing facility renovated. By letter dated June 21, 2002, counsel for the supervisors advised the court that they had decided to construct a new courthouse on one of three possible sites. The letter also informed the court that the supervisors were "aware that no delay in complying with the Court-ordered deadlines in the Decree will be allowed . . . and no such delay is expected by the Board for the construction of a new courthouse on any of the three above-mentioned locations." This letter struck the court as being very much out of character for the supervisors because of its conciliatory tone.

On July 1, 2002, the Board noted its appeal. This appears to have been the last day permitted under the Rules of the Supreme Court for noting an appeal. While the supervisors have every right to note any appeal at any time during the prescribed period, their timing was consistent with their five-year habit of delaying efforts to resolve this matter. On July 16, 2002, the supervisors forwarded to the court and counsel their motion to stay the decree of May 31, 2002, pending the appeal. After hearing argument of counsel on July 24, 2002, the court denied the supervisors' motion to stay, and that part of the transcript recording the court's reasoning for denying the stay is incorporated into this opinion as if written herein verbatim. Suffice it to say, the court was and remains of the opinion that the purpose of the motion to stay was just one more of many steps the supervisors have taken to delay resolution of this matter. The transcript of the July 10, 2002, hearing in the Appomattox General District Court concerning the allegation that the supervisors had violated the Freedom of Information Act in reaching certain decisions concerning this matter is illustrative of their desire to delay this cause.[5] Of course, the longer the delay, the greater expense the supervisors caused for the citizens of Appomattox County considering the attorney's fees

---

[5] That transcript was filed as Exhibit 1 to the Commonwealth's Brief in Opposition to Motion to Suspend or Stay Decree Pending Appeal.

for this trial and the increased costs of construction. The court has absolutely no difficulty in finding, and does indeed find, that the supervisors actions in causing delay were deliberate and in bad faith.

Throughout the course of this cause, the court has found the circumstance of sitting in judgment of the actions of elected officials most uncomfortable. At every hearing, the court urged the parties to resolve the matter and granted as much time as requested for consultations between the parties. Even in its mandamus decree, the court refrained from imposing its own opinion of whether a new courthouse should be built or whether the existing facility should be renovated. Nevertheless, the record has demonstrated that the supervisors' actions have been calculated to delay any decision. The hostility of the supervisors toward the court has been almost palpable. Yet, despite the supervisors' intractable behavior, the judges of the trial courts of Appomattox County have maintained a willingness to consult and cooperate throughout this process. Nevertheless, as a result of the supervisors' tactics of delay, the resolution of this suit has been stalled for over two years.

The Commonwealth seeks attorneys' fees and litigation expenses and has asserted several theories, which, it says, authorizes the court to grant its motion. As the Commonwealth asserts, this proceeding was necessary to require the supervisors to perform the ministerial duty of providing suitable courthouse facilities.[6] The court is absolutely certain that the supervisors have been aware that the present facilities were not suitable for at least five years. They have not simply neglected to make the facilities suitable; they have refused to do so. It seems logical that in such mandamus cases attorneys' fees and costs should be recoverable by the Commonwealth.

In Virginia, a prevailing party cannot normally recover attorneys' fees unless authorized specifically by a statute or contract between the parties. *Mullins v. Richlands National Bank*, 241 Va. 447, 449 (1991); *Prospect Devel. Co. v. Bershader*, 258 Va. 75, 92 (1999). Because there is no contract between the parties, the Commonwealth's position must rest either on a statute or an exception to the general rule. A trustee may recover attorney's fees from an estate when he was required, in good faith, to defend the trust. *Cooper v. Brodie*, 253 Va. 38, 44 (1997). A recovery of attorney's fees is possible in alimony and support disputes in the absence of statutory authorization. *Heflin v. Heflin*, 177 Va. 385, 399-400 (1941). In a fraud suit, the defrauded party may recover attorney's fees. *Bershader*, 92. Obviously,

---

[6] The duty to provide suitable facilities is ministerial; the method by which the duty is fulfilled is discretionary.

this cause involves none of these issues, and the Virginia Supreme Court has shown reluctance to expand the scope of these exceptions.

The taxing of costs is similarly unusual in the absence of contract or statute. Taxing of costs was unknown at common law. *Ryan v. Davis*, 201 Va. 79, 85 (1959). Statutes authorizing the taxing of costs are in derogation of the common law and must be construed strictly and not enlarged in their operation by construction beyond their express terms. *Chesapeake & O. Ry. v. Kinzer*, 206 Va. 175, 181 (1965). This is true even though a statute is remedial in nature. *O'Connor v. Smith*, 188 Va. 214, 222 (1948).

The Virginia Supreme Court has described when fees should be awarded absent statutory provisions. *Advanced Marine Enterprises v. PRC, Inc.*, 256 Va. 106 (1998), involved legal and equitable claims in a chancery proceeding. A manager in PRC's engineer department contacted Advanced Marine Enterprises (AME) and asked if it would have any interest in employing all seven managers from PRC's marine engineering department. AME was interested, and the managers of the two companies formed a plan under which AME would attempt to hire every employee of PRC's marine engineering department. Under this plan, AME made secret job offers to PRC personnel who were required to resign without notice on the same day despite PRC's requirement for a two-week notice of departure. PRC personnel had already signed an agreement requiring them to protect PRC's proprietary information and agreeing not to compete with PRC for a period of eight months after termination of employment within a fifty-mile radius of a PRC office. AME knew of all of these terms of employment at PRC. When the plan was implemented, PRC sought injunctive relief, including costs and fees for expert witnesses.

The chancellor awarded costs as requested. He stated from the bench, "I think the method by which the [PRC Managers] elected to do this was covert, surreptitious, violated civil duties [and] was absolutely wrong." At a post-trial hearing, he further said, "the total impact of this thing was outrageous. This was a group wrong, and they were intending to disadvantage their employer while sitting there silent setting up their own employer for the benefit of themselves and the benefit of AME." *Advanced Marine*, 115. The Virginia Supreme Court, however, reversed the Chancellor's award of costs for various expenses, including expert witness fees. The Court noted that the chancellor's discretion to award costs "is limited only to those costs essential for prosecution of the suit, such as filing fees or charges for service of process." *Advanced Marine*, 126.

No statute cited by the Commonwealth can be read against this background to authorize the award of the costs requested. Although the court finds the supervisors' conduct reprehensible, the circumstances are not nearly so egregious as those in *Advanced Marine*. In that case, the Virginia Supreme Court did not forge another exception to the general rule of costs.

The Commonwealth next seeks an award of expenses and attorneys' fees under Rule 4:12(c) of the Rules of the Supreme Court of Virginia. The court cannot determine that the supervisors' specific responses to the discovery items at issue were in bad faith and declines to award expenses and attorney's fees under this rule.

For the reasons stated, the Commonwealth's motion for an award of costs and expenses is denied. Perhaps, through this suit, the Supreme Court may have the opportunity to examine these issues as they apply to mandamus proceedings.