**C.F. TRUST, INC., et al., Plaintiffs,**

v.

**FIRST FLIGHT LIMITED PARTNERSHIP, et al., Defendants.**

**No. 1:99CV1742.**

United States District Court, E.D. Virginia, Alexandria Division.

March 16, 2005.

Thomas Lawrence Albert, Birch Horton Bittner & Cherot, Washington, DC, Ann Nicole Kathan, Ann N. Kathan PLLC, Alexandria, VA, James Robert Schroll, Bean Kinney & Korman PC, Arlington, VA, for Plaintiffs.

Russell James Gaspar, Cohen Mohr LLP, Washington, DC, James Thomas Bacon, Allred Bacon Halfhill & Young PC, Fairfax, VA, Robert Jay Zelnick, Szabo, Zelnick & Erickson, P.C., Woodbridge, VA, Kerr Stewart Evans, Jr., Pepper Hamilton LLP, Washington, DC, for Defendants.

### MEMORANDUM OPINION

ELLIS, District Judge.

Attorneys' fees is the sole remaining unresolved issue in this diversity declaratory judgment action. At issue specifically is whether an award of attorneys' fees is allowable and warranted under Virginia law where, as here, plaintiffs won a declaration that defendants' wrongful conduct warranted piercing the corporate veil in reverse.

### I.[1]

In November 1999, plaintiff C.F. Trust, Inc.[2] filed this action seeking a declaratory judgment that defendant First Flight Limited Partnership ("First Flight") and other business entities were the alter egos of defendant Barrie Peterson. At that time, Peterson owed C.F. Trust more than $6 million from a 1996 state court judgment arising from Peterson's default on two commercial notes. *See C.F. Trust, Inc. v. Peterson,* Law No. 39433 (Prince William County Cir. Ct. Feb. 1, 1996). C.F. Trust's purpose in bringing this action was to pierce First Flight's corporate veil and thereby allow C.F. Trust to reach First Flight's assets to satisfy the 1996 judgment against Peterson. In common parlance, C.F. Trust was seeking to pierce the corporate veil in reverse.[3] Ultimately, this effort succeeded, but not before the parties had litigated the matter extensively in this Court, the U.S. Court of Appeals for the Fourth Circuit, and the Supreme Court of Virginia.[4] In this Court, a four-day trial

---

1. The facts recited here are derived from the findings of fact and conclusions of law set forth in the merits decision in this matter, *see C.F. Trust, Inc. v. First Flight Ltd. P'ship,* 140 F.Supp.2d 628 (E.D.Va.2001), and the facts recited in *C.F. Trust, Inc. v. Tyler,* 318 B.R. 795 (E.D.Va.2004), which vacated a bankruptcy court order barring the present fee petition.

2. C.F. Trust was assisted in the prosecution of this action by plaintiff Atlantic Funding Corporation. Atlantic Funding is not a party to C.F. Trust's petition for attorneys' fees, however, and thus is not discussed here.

3. In a traditional veil-piercing action, the plaintiff seeks to reach the assets of a corporate insider to satisfy claims against a business entity. *C.F. Trust, Inc. v. First Flight Ltd. P'ship,* 111 F.Supp.2d 734, 740 (E.D.Va. 2000). Here, by contrast, C.F. Trust was seeking to reach the assets of a business entity to satisfy claims against an insider. Both traditional and reverse veil-piercing actions serve the same goal, namely "to prevent abuses of corporate or partnership structures." *Id.*

4. *See C.F. Trust, Inc. v. First Flight Ltd. P'ship,* 306 F.3d 126 (4th Cir.2002), *certifying questions to* 266 Va. 3, 580 S.E.2d 806 (Va. 2003), *answering certified questions,* 338 F.3d 316 (4th Cir.2003), *aff'g* 140 F.Supp.2d 628 (E.D.Va.2001).

led to the issuance of detailed factual findings and conclusions of law. *See C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 140 F.Supp.2d 628 (E.D.Va.2001) [hereinafter *First Flight*]. Included among the findings were:

(1) that several other debt-collection lawsuits had been filed against Peterson or entities he controlled, and that these lawsuits were "strong evidence of Barrie Peterson's intent and efforts to evade payment of the outstanding amount due on plaintiffs' judgments," *id.* at 631–32;

(2) that "Barrie Peterson abused the First Flight Partnership by using it as a device to pay his personal expenses while insulating himself from payment of plaintiffs' outstanding judgments," *id.* at 633;

(3) that Barrie Peterson transferred part ownership of First Flight to his son Scott "to develop and further his scheme to evade payment of the plaintiffs' judgments," *id.* at 636;

(4) that "the funds of ... First Flight ... and Scott Peterson were commingled with the funds of Barrie Peterson," *id.* at 638;

(5) that "Barrie Peterson was able to siphon money from [First Flight and other entities] to pay approximately $2 million for his personal benefit with funds not subject to plaintiffs' charging orders," *id.*; and

(6) that these and other facts "convincingly demonstrate[d] that Barrie Peterson orchestrated a scheme to evade payment of his outstanding obligations to plaintiffs, his judgment creditors," *id.* at 640.

On the basis of all the factual findings, C.F. Trust was held to have established the prerequisites for reverse-piercing First Flight's corporate veil, namely (i) a unity of interest between Peterson and First Flight, and (ii) that Peterson had used his control over First Flight to evade his obligations to C.F. Trust and others. *Id.* at 644. As a result, an Order issued declaring, *inter alia*, that First Flight was the alter ego of Barrie Peterson, and that its assets were therefore subject to C.F. Trust's judgment against Peterson. *See C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 140 F.Supp.2d 628 (E.D.Va.2001) (Order). That Order deferred the question whether C.F. Trust was entitled to attorneys' fees and costs pending any appeal. *Id.*

In early 2001, First Flight timely appealed the judgment to the Court of Appeals for the Fourth Circuit, which in turn certified to the Supreme Court of Virginia the question whether Virginia law recognized a reverse veil-piercing cause of action. *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 128 (4th Cir.2002). In June 2003, the Supreme Court of Virginia answered the certified question in the affirmative, holding that reverse veil-piercing was indeed cognizable under Virginia law. *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 11, 580 S.E.2d 806, 810 (2003). Consequently, the Fourth Circuit soon thereafter affirmed this Court's decision and declaration. *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 338 F.3d 316, 317 (4th Cir.2003). Thereafter, in October 2003, C.F. Trust renewed its claim for fees by filing a petition for an award of attorneys' fees against First Flight.

During the two-and-one-half year period that C.F. Trust's fee claim was pending here, however, C.F. Trust's position with respect to Peterson and First Flight changed considerably. To begin with, Peterson filed a voluntary petition for Chapter 11 bankruptcy in April 2001, a few weeks after this Court's declaratory judgment was entered. *See C.F. Trust, Inc. v. Tyler*, 318 B.R. 795, 798 (E.D.Va.2004). In

response, C.F. Trust filed four proofs of claim against Peterson's bankruptcy estate, including one for $886,000 in attorneys' fees and costs from the 1996 litigation on the commercial notes. *Id.* This proof of claim was based on a provision in the notes stating that Peterson would be liable for all costs of collecting on the notes, including attorneys' fees.[5] In March 2002, approximately one year after filing the four proofs of claim, C.F. Trust filed a fifth proof of claim against the estate, this one claiming $179,000 in attorneys' fees and costs from the instant litigation. *Id.*

In the summer of 2002, Peterson, First Flight, C.F. Trust, and other creditors of the bankruptcy estate began extensive negotiations concerning Peterson's financial obligations and the means by which those obligations might be fulfilled. *Id.* During this process, C.F. Trust agreed to reduce its $886,000 fee-and-cost claim by $350,000 in exchange for the prompt sale of a valuable parcel of real property belonging to the estate, and First Flight agreed to contribute a portion of its monthly excess cash flow to the repayment of Peterson's debts. *Id.* at 798–99. Negotiations continued through the end of the year, and by early 2003 a bankruptcy reorganization plan was produced. Under the terms of the plan, C.F. Trust would receive full payment for its first four proofs of claim—after subtracting the $350,000 concession—but nothing for its fifth proof of claim. The plan was approved by the bankruptcy court in March 2003. *Id.* at 799.

At the time C.F. Trust's renewed fee petition was filed here, therefore, Peterson's repayment obligations had been set-

tled, with C.F. Trust's consent, under a confirmed Chapter 11 plan of reorganization. Citing this plan, the trustee of Peterson's bankruptcy estate responded to C.F. Trust's petition by moving the bankruptcy court for a show cause order against C.F. Trust, contending that C.F. Trust was seeking to enlarge its recovery from the bankruptcy estate beyond the payments provided for in the plan. *Id.* at 800. In light of this motion, C.F. Trust's fee petition was again deferred here, this time pending resolution of the trustee's motion in the bankruptcy court. *See C.F. Trust, Inc. v. First Flight Ltd. P'ship,* Case No. 1:99cv1742 (E.D.Va. Nov. 7, 2003) (Order).

C.F. Trust argued in the bankruptcy court that its petition sought an award from First Flight, not Peterson himself, and that except for its excess cash flow, First Flight's assets were not within the protection of the bankruptcy estate. *See Tyler,* 318 B.R. at 800. C.F. Trust further noted that its claim for attorneys' fees in this litigation was not provided for under Peterson's confirmed plan, and that its requested award thus would not be duplicative of plan payments. Finally, C.F. Trust claimed that its petition was not based on Peterson's obligations under the commercial notes, but rather on First Flight's participation in a scheme to defraud Peterson's creditors. According to C.F. Trust, the Supreme Court of Virginia's decision in *Prospect Development Co., Inc. v. Bershader,* 258 Va. 75, 515 S.E.2d 291 (1999), provided for an award of attorneys' fees in such circumstances. In response, the trustee and First Flight contended that even if *Bershader* authorized an award of fees against First Flight here,

5. Specifically, each note stated that Peterson "shall pay all costs incurred by the Bank in collecting this Note, with or without litigation, or in preserving, perfecting or disposing of any of the Collateral, including attorneys

fees in the amount of 25% of the amount due hereunder if the Bank retains or uses the services of an attorney in connection therewith."

C.F. Trust had released its right to any such award in a general release of claims executed in connection with the confirmation of Peterson's reorganization plan. *See Tyler*, 318 B.R. at 800. Without denying that it had signed the release, C.F. Trust claimed that its petition came with the scope of the release's exceptions, and thus had not been waived. This question—whether the release barred C.F. Trust's fee petition against First Flight—was submitted to the bankruptcy court in January 2004.

Later that month, the bankruptcy court held that the release was ambiguous with respect to the question presented, and called for parol evidence with respect to the intent of C.F. Trust, First Flight, and other creditors of the estate regarding the scope of the release. *See In re Peterson*, Case No. 01–11529–RGM (Bkrtcy.E.D.Va. Jan. 8, 2004) (Order). Following an evidentiary hearing in May 2004, the bankruptcy court issued a Memorandum Opinion holding that C.F. Trust's petition was barred by the release. *In re Peterson*, Case No. 01–11529–RGM (Bkrtcy.E.D.Va. June 7, 2004) (Memorandum Opinion). On appeal here, however, it was held that the release unambiguously preserved C.F. Trust's right to pursue its deferred fee claim against First Flight. *See Tyler*, 318 B.R. at 809–10. Accordingly, the bankruptcy court's order barring C.F. Trust's petition was vacated. *See id.*

Following resolution of the bankruptcy appeal, a hearing was held here on C.F. Trust's petition for attorneys' fees in the instant litigation. At long last, therefore, the fee matter is ripe for resolution.

**II.**

As stated, the basis of C.F. Trust's fee petition is *Prospect Development Co., Inc. v. Bershader.*[6] In that case, the Supreme Court of Virginia recognized an exception to the general rule in Virginia against awarding attorneys' fees except when provided for by statute or contract, upholding a chancellor's award of incurred attorneys' fees to plaintiffs prevailing on claims of fraud and constructive fraud. *Bershader*, 515 S.E.2d at 300–01. In C.F. Trust's view, the principles announced in *Bershader* permit—indeed, compel—an award of attorneys' fees against First Flight here. Thus, a close analysis of *Bershader* is central to the resolution of C.F. Trust's fee petition.

The plaintiffs in *Bershader* were naturalists and birdwatchers who purchased a parcel of land from a developer in reliance on the developer's assurances that the adjoining parcel was "preserved land," on which construction was prohibited. *Id.* at 294. In reality, the adjoining parcel was not "preserved land," and the developer "had always intended to construct a house on [it]," even as its agents repeatedly informed the Bershaders otherwise. *Id.* at 295. When the developer took steps to build on the adjoining parcel several years later, the Bershaders sued the developer in chancery for breach of contract, actual

---

6. As C.F. Trust's reliance on *Bershader* suggests, Virginia law governs this case. In diversity cases, a federal district court is bound to apply the substantive law and choice of law rules of the forum state. *See Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 623–24 (4th Cir.1999). Under Virginia law, the law of the state of incorporation determines whether the corporate veil may be pierced. *See Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F.Supp.2d 467, 477 n. 18 (E.D.Va.2002) (citing *Morrow v. Vaughan–Bassett Furniture Co.*, 173 Va. 417, 4 S.E.2d 399, 401 (Va.1939)). Because First Flight is a Virginia limited partnership, Virginia law applies here. Additionally, neither party contends that any law other than Virginia's should apply.

fraud, and constructive fraud. *See id.* at 293. At the conclusion of an *ore tenus* hearing, the chancellor held in the Bershaders' favor on each count, granting the Bershaders a negative easement on the adjoining parcel,[7] an injunction to enforce the easement, compensatory damages, and incurred and future attorneys' fees. *See id.* at 293–94, 300–01.

On appeal, the Supreme Court of Virginia overturned the awards of compensatory damages and future attorneys' fees but upheld all other aspects of the chancellor's decree, including the award of incurred attorneys' fees. In so holding, the Supreme Court of Virginia observed that the Bershaders' victory in the chancery court "would have been hollow" absent a fee award because they had spent more than $150,000 proving that they had been defrauded. *Id.* at 301. On this basis, and on the basis of the developer's "callous, deliberate, [and] deceitful acts," the Supreme Court of Virginia concluded that the chancellor had acted within his equitable powers by awarding incurred attorneys' fees to the Bershaders, noting for future guidance that "[w]hen deciding whether to award fees, the chancellor must consider the circumstances surrounding the fraudulent acts and the nature of the relief granted to the defrauded party." *Id.*

In *Bershader's* wake, courts interpreting the decision have taken care to observe the equitable principles underlying its holding, upholding denials of attorneys' fees where the relief granted to the prevailing party makes a fee award unnecessary for a fair outcome. *See, e.g., Simons v. Wassenaar,* 268 B.R. 477, 480–481 (W.D.Va.2001); *Tauber v. Commonwealth,* 263 Va. 520, 562 S.E.2d 118, 133 (2002). Particularly instructive in this regard is *Wassenaar,* a bankruptcy appeal from a denial of fees under *Bershader* to creditors prevailing on claims of fraudulent conveyance. In that case, after noting that it was unclear whether *Bershader* authorized a fee award on claims of fraudulent conveyance, the district court upheld the bankruptcy court's denial of *Bershader* fees, observing that the creditors "d[id] not need the Court's equitable assistance," because they had already received a partial fee award in the bankruptcy court under Virginia's fraudulent conveyance statute. *Wassenaar,* 268 B.R. at 480–481; Va. Code § 55–82 (2005). As the district court explained, avoiding a hollow victory was "[a]n important factor in the [*Bershader*] court's reasoning," and thus "had the Bershaders been able to obtain attorney's fees under [the fraudulent conveyance statute] or some other statute, the Supreme Court of Virginia would not have been compelled to create a new route to attorney's fees." *Wassenaar,* 268 B.R. at 480–481. Because the creditors in *Wassenaar* had obtained "some relief" pursuant to the fraudulent conveyance statute, the district court reasoned, *"Bershader* d[id] not apply." *Id.* at 481. The district court further reasoned, *obiter dictum,* that because the creditors had received some of their requested fees, "it would [have been] within [the] bankruptcy court's discretion to rule that additional attorney's fees were not merited [under *Bershader*], even if this case were one of common-law fraud." *Id.* at 481 n. 1.

■ Although it is clear from *Bershader* that the avoidance of a hollow victory is the purpose underlying the holding of the case, neither that decision nor its progeny establishes clear boundaries for the fraud

---

7. The Bershaders' negative easement consisted of the power to veto any development or construction on the adjoining parcel. *See Bershader,* 515 S.E.2d at 298–99.

exception to the general rule against awarding attorneys' fees unless authorized by statute or contract. Consequently, although *Bershader* itself involved only a chancellor's discretion to award fees "in a fraud case,"[8] C.F. Trust argues that *Tauber v. Commonwealth,* a *Bershader* descendant, authorizes fee awards beyond the confines of *Bershader.* This argument is unpersuasive; *Tauber,* strictly speaking, merely upheld the denial of fees in a case involving claims of conversion, usurpation of corporate opportunities, and self-dealing. *See Tauber,* 562 S.E.2d at 132–33. Any suggestion in *Tauber* that *Bershader* is applicable outside the realm of common-law fraud is pure *dictum.*[9] Further, no court has awarded fees under *Bershader* except in cases involving claims of actual and constructive fraud. In sum, therefore, the most that can fairly be said regarding *Bershader* and its progeny are (i) that Virginia law permits a chancellor to award attorneys' fees to a party prevailing on claims of common-law fraud, and (ii) that this exception, like all exceptions to the rule against awarding attorneys' fees unless authorized by statute or contract, should be interpreted narrowly. *See Commonwealth v. Appomattox County Bd. of Supervisors,* 59 Va. Cir. 341, 347 (2002) ("the Virginia Supreme Court has shown reluctance to expand the scope of the[ ] exceptions [to the general rule]"). Accordingly, while neither *Bershader* nor its progeny are clear as to the boundaries of the fraud exception, it is unlikely that *Bershader* would allow an award of attorneys' fees in the instant case, a case involving novel and unresolved issues of Virginia corporations law rather than classic fraud.

Nevertheless, assuming without deciding that *Bershader* would permit an award of attorneys' fees in the present circumstances, it is clear from the equitable principles underlying the decision that an award of attorneys' fees is not warranted here. While the record in this case clearly reflects that, as in *Bershader,* Peterson and First Flight engaged in "callous, deliberate, [and] deceitful acts" designed to thwart the collection of Peterson's debts, it also reflects that C.F. Trust is not in danger of winning a hollow victory here. As a result of the declaratory judgment granted in the merits decision, liability for Peterson's multimillion-dollar debts was imposed on First Flight, and, consequently, First Flight began paying those debts through the Chapter 11 plan. More importantly, however, there existed in this case, as in *Wassenaar,* another path by which C.F. Trust could have recovered its attorneys' fees in this litigation: the commercial notes. Indeed, C.F. Trust initially asserted both *Bershader* and the notes as alternative bases for its fee petition, but withdrew the latter when confronted with the argument that it had settled Peterson's obligations under the notes during the bankruptcy process. Accordingly, C.F. Trust is not entitled to an equitable remedy here because it has only itself to blame if it considers its victory on its veil-piercing claim "hollow." Therefore, C.F. Trust's petition for an award of fees under *Bershader* will not be granted.

### III.

 For the foregoing reasons, a discretionary award of attorneys' fees against First Flight is unwarranted. C.F. Trust's petition, therefore, is denied.[10]

An appropriate Order will issue.

---

8. *Bershader,* 515 S.E.2d at 301.

9. The question before the Supreme Court of Virginia in *Tauber* was whether the chancel-lor was *required* by *Bershader* to grant a fee award in the circumstances of that case, and the Supreme Court of Virginia held that he was not. *See Tauber,* 562 S.E.2d at 132–33.

10. Not addressed here is the issue of costs, which a prevailing party in federal court is routinely entitled to recover as a matter of course. *See* FED. R. CIV. P. 54(d)(1); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir.1999).